UNITED STATES of America, Plaintiff–Appellee,

v.

Frank Robert BRIGGMAN, Defendant–Appellant.

No. 89–6274
Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

March 29, 1991.

---

Kenneth M. Swartz, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Marcos D. Jimenez, Linda Collins–Hertz, Dawn Bowen, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before CLARK, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

This appeal examines the denial of a motion to suppress and an enhanced sentence. Defendant-appellant Frank Robert Briggman contends that the district court erred in allowing the presentation of evidence obtained pursuant to a stop in a high crime area and in sentencing him based upon an upward departure from the Sentencing Guidelines. Upon review of the record, we affirm.

## I. BACKGROUND

At approximately 4:00 a.m. on February 17, 1989, Lieutenant Marvin Austin of the Metro–Dade Police Department routinely was patrolling northbound on N.W. 2nd Avenue near 166th Street in Miami, Florida. An experienced, twenty-one year police veteran, Austin noticed a parked, occupied automobile with its parking lights illuminated on the east side of N.W. 2nd Avenue inside the parking lot of several business establishments. Numerous crimes, including larcenies and robberies, recently had occurred in the surrounding business establishments.

From experience, Austin knew that perpetrators of crimes generally parked their cars some distance from business establishments and returned to them to escape. In his previous patrols, Austin had not seen occupied vehicles at 4:00 a.m. in the commercial lot where Briggman was parked. Austin cruised the parking lot twice. As he approached Briggman for the second time, Briggman exited the commercial parking lot, turned in front of Austin's vehicle and onto a major thoroughfare. Austin stopped Briggman because Briggman's actions had aroused his suspicion and Austin was concerned about the business establishments in the area.

When stopped, Briggman, wearing a jogging suit and leather gloves with the fingertips removed, exited the car and approached Austin. Briggman did not have a driver's license and stated that he had stopped to tune a portable radio because the car radio was inoperative. During his initial encounter with Briggman, Austin spoke in a normal tone, did not touch, threaten or intimidate Briggman, and did not draw his weapon.

Noticing a Broward County tag on the vehicle, Austin directed Briggman inside the car while he checked the state identification card that Briggman had produced and the license plate. Austin learned that Briggman's license was suspended and that he was designated as a career criminal. Austin requested a back-up unit while he waited for the results of the automobile tag inquiry.

A second police officer arrived and requested the vehicle's registration, which was in the name of Susan Maus. Briggman told the officer that she was his girlfriend's daughter and that she had given him the car. While inspecting the registration, the second officer saw a shotgun lying in plain view on the floor of the back seat behind Briggman. The officer then arrested Briggman.

Susan Maus and her father arrived on the scene and retrieved the vehicle which had been stolen from their driveway. Upon returning home, Susan Maus and her father discovered that their house had been broken into and that Mr. Maus's shotgun had been removed from the hallway closet. Mr. Maus could not locate the keys to his company van, which was parked outside his home.

Mr. Maus subsequently identified as his the shotgun found in his daughter's car, when Briggman was arrested. In the police inventory of Briggman's belongings following his arrest, the keys to Mr. Maus's van were located inside Briggman's gym bag, which was found in the car when he was arrested. Briggman was charged with grand larceny, possession of a firearm by a felon and driving with a suspended license.

On May 18, 1989, a federal grand jury in the Southern District of Florida indicted Briggman for being a felon in possession of a shotgun, in violation of 18 U.S.C. § 922(g)(1). Because Briggman had three prior felony convictions for violent crimes, he qualified as an armed career criminal subject to enhanced penalty provisions under 18 U.S.C. § 924(e)(1). The district court denied Briggman's pretrial motion to suppress the shotgun found in the car. Briggman was convicted by a jury.

At sentencing, Briggman did not object to the factual statements in the presentence investigation report (PSI), other than the portions relating to the conduct about which he complains in this case. The PSI establishes Briggman's extensive criminal history, including serious criminal convic-

tions on at least eight separate occasions.[1] Briggman's convictions show violent and dangerous conduct, including carrying a concealed firearm, the use of a revolver during a robbery, burglaries of occupied dwellings and motel rooms and fleeing arrest in a stolen vehicle at a high rate of speed. Furthermore, Briggman's criminal history contains repeated failures to complete, or revocations of, probation. He committed his crimes with frequency and soon after his release from prison or placement on probation.

Briggman's criminal history translated into 23 criminal history points, 10 more than necessary to reach the highest criminal category under the Sentencing Guidelines. Before sentencing, the government requested an upward departure and a sentence of at least 25 years because the Sentencing Guidelines did not reflect the seriousness of Briggman's criminal history and the likelihood of his recidivism as well as his threat to public safety.

At sentencing, Briggman's counsel argued that the statutory minimum of 15 years, the presumptive minimum under the Sentencing Guidelines, sufficed as punishment. He characterized Briggman's criminal history as "not quite as serious as the 3 prior felonies that were the basis of the enhancement...." Supp. R3–4. While acknowledging that Briggman had been "in and out [of prison] a few times but the sentences have not been that long," Briggman's counsel argued for another "opportunity." *Id.* at 5, 6. Concerning Briggman's danger to public safety and his criminal purpose, his attorney contended that there was "circumstantial but no reliable evidence to show he burglarized the [Maus's] house." *Id.* at 14.

The district court rejected these arguments with an upward departure from the Sentencing Guidelines:

After consideration of the statements by all the parties, review of presentence investigation, the severity and the significance of the instant offense, the Court

will impose a sentence that departs from the guideline range.

This departure will be based in part on the extensive, I mean extensive criminal record of the defendant. The defendant has been shown to be an absolute unacceptable probation or parole risk. His employment earnings are virtually nil unverified.

In effect, you are an armed career criminal. Pursuant to Section 5K2.14, you pose a danger to the public safety, and to the community. The guideline range so clearly underestimates the seriousness of your criminal history and likelihood that you [will] commit a future crime. Departure of the guideline, in my judgment, is warranted.

*Id.* at 15–16. The district court sentenced Briggman to 360 months (30 years) of imprisonment, followed by five years of supervised release and a special assessment of $50. Briggman appeals the district court's denial of his motion to suppress as well as his enhanced sentence.

## II. DISCUSSION

■ Our review of the denial of a motion to suppress is a mixed question of fact and law. "The appellant must show that the district court's findings of fact were clearly erroneous, but the application of the law to those facts is subject to *de novo* review." *United States v. Alexander*, 835 F.2d 1406, 1408 (11th Cir.1988). A district court's factual findings "on a pretrial motion to suppress are binding on appeal unless clearly erroneous." *United States v. Ollet*, 848 F.2d 1193, 1195 (11th Cir.) (per curiam), *cert. denied*, 488 U.S. 996, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988). We construe the facts most favorably to the prevailing party. *Alexander*, 835 F.2d at 1408.

■ In *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968), the Supreme Court authorized brief, investigatory stops when a "police officer ob-

---

**1.** The convictions listed in the PSI include burglary of an occupied motel room, escape from jail, armed robbery of a cinema, burglary of an occupied dwelling, grand thefts of automobiles, and possession of cocaine. Briggman's criminal conduct also includes arrests on eleven other occasions and additional convictions for attempted trespass, criminal trespassing, loitering, and prowling.

serves unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." Subsequently, the Court explained:

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (citations omitted). An officer's stop must be based on specific, articulable facts and rational inferences. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880. In examining the totality of the circumstances, a reviewing court must give due weight to the officer's experience. *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). Recently, the Court has clarified that the Fourth Amendment requires " 'some minimal level of objective justification' " for a *Terry* stop. *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting *INS v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). Furthermore, there is no legitimate expectation of privacy in the contents of an automobile in which there is no property or possessory interest. *See Rakas v. Illinois,* 439 U.S. 128, 148–49, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978); *United States v. Hensel,* 672 F.2d 578, 579 (6th Cir.) (per curiam), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2907, 73 L.Ed.2d 1316 (1982).

■ In this case, a highly experienced officer's suspicion reasonably was aroused when he noticed Briggman parked in a parking lot at 4:00 a.m. in a high crime area, when commercial establishments served by the lot were closed for the night. In departing the parking lot, Briggman at-tempted to evade the officer, who then made the stop. The officer properly limited Briggman's detention to a request for his driver's license and an explanation of his conduct in a high crime area. Briggman, wearing suspicious clothing, could not produce a driver's license and gave unsatisfactory answers to the officer's questions. The officer extended the duration of the stop to check Briggman's background. The seizure of the obvious shotgun, which Briggman alleges was a constitutional violation, was permissible. We find no error in the district court's denying Briggman's suppression motion.

■ Briggman also contends that the district court improperly departed from the presumptive Guidelines sentence of 15 years. Review of an appeal from a sentence imposed under the Sentencing Guidelines requires evaluation of the district court's factual findings under the clearly erroneous standard. 18 U.S.C. § 3742(e); *United States v. Scroggins,* 880 F.2d 1204, 1206 n. 5 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990). Under 18 U.S.C. § 3553(b), a sentencing court may depart from the Guidelines range in a particular sentence when aggravating circumstances "of a kind, or to a degree" are present that were not adequately taken into account by the Sentencing Commission in formulating the Guidelines and that should result in a different sentence. *See* Sentencing Guidelines § 5K2.0.

This court has established a three-part test for reviewing an upward departure under Section 3553(b):

First, was the aggravating circumstance cited by the district court adequately taken into consideration by the Sentencing Commission in formulating the guidelines? Second, if adequate consideration was not given to the circumstance, was consideration of the circumstance consistent with the goals of the sentencing guidelines? If the circumstance was properly taken into account, was the extent of the departure from the guideline range reasonable?

*United States v. Shuman,* 902 F.2d 873, 875–76 (11th Cir.1990) (citations omitted). We must analyze Briggman's sentence under this test.

■ Briggman was convicted under the Armed Career Criminal Act of 1984, which mandated a minimum sentence of 15 years because he had at least three prior convictions for violent felonies. 18 U.S.C. § 924(e)(1). In contrast to the statute, intended to incapacitate and punish repeat offenders, the Sentencing Guidelines do not address directly the proper sentencing range for offenses under section 924(e)(1). *See United States v. Jackson,* 835 F.2d 1195, 1198 (7th Cir.1987), *cert. denied,* 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988). Furthermore, the career offender provisions do not apply in this case because Briggman's crime was not one of violence. Because Briggman's criminal history category (VI) combined with the Guidelines § 2K2.1 base offense level yielded a sentencing range below the statutory minimum, the statutory minimum sentence of 15 years became the presumptive sentence pursuant to Sentencing Guidelines § 5G1.1(b).

■ Briggman's PSI demonstrates that he spent most of his adult life violating the law. From 1978 (age 22) to 1989 (age 33), he repeatedly committed crimes and violated probation with disturbing frequency. His criminal actions, generally involving violent felonies and the use of firearms, show a disregard for the property and lives of others. In this case, Briggman clearly contemplated returning to the Maus home and stealing the van, since the keys were found in his gym bag located in the stolen car. Furthermore, Briggman committed many of his crimes shortly after release from prison or placement on probation.

The district court relied on Sentencing Guidelines §§ 4A1.3 (underrepresentation of criminal history) and 5K2.14 (danger to public safety) in departing upward in Briggman's sentence. The sentencing judge adequately explained the reasons for his departure. Recognizing that the presumptive Guidelines sentence of 15 years failed to reflect the egregious nature of Briggman's criminal record, the district court reasonably enhanced his sentence in keeping with the goals of the Sentencing Guidelines.[2] *See United States v. Campbell,* 888 F.2d 76 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1484, 108 L.Ed.2d 620 (1990) (This court upheld the virtual doubling of a Guidelines sentence which significantly underrepresented the defendant's criminal history.). We conclude that the district court appropriately sentenced Briggman with an upward departure from the Sentencing Guidelines.

For the reasons stated herein, the district court's denying Briggman's motion to suppress and giving him an enhanced sentence under the Sentencing Guidelines is AFFIRMED.

---

**2.** The Sentencing Guidelines contemplates departures for level VI offenders:
The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision above the guideline range for a defendant with a Category VI criminal history may be warranted.
Sentencing Guidelines § 4A1.3.