COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Clements, Kelsey,
                McClanahan, Haley, Petty and Beales
Argued at Richmond, Virginia


GEORGE EDWARD RAAB

                                                                        OPINION BY
v.         Record No. 0972-06-1                        JUDGE D. ARTHUR KELSEY
                                                                        OCTOBER 30, 2007
COMMONWEALTH OF VIRGINIA


UPON REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge[1]

            David Michael Good (David Michael Good, P.C., on brief),
            for appellant.

            Karri B. Atwood, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        The trial court convicted George Edward Raab of driving under the influence, his third or

subsequent offense, in violation of Code § 18.2-266.  See also Code § 18.2-270.  On appeal,

Raab claims the evidence obtained by the arresting officer should have been suppressed because

the officer had no legal basis to detain him.  After a panel of this Court rejected this argument in

Raab v. Commonwealth, 49 Va. App. 638, 644 S.E.2d 78 (2007), Raab asked us to reconsider

the matter *en banc*.  Having agreed to do so, we now affirm Raab's conviction.

I.

        Under settled principles, we address the legal issues arising from a suppression motion

"only after the relevant historical facts have been established."  Logan v. Commonwealth, 47

------

        [1] Judge Shockley entered the final conviction and sentencing order.  Judge William R.
O'Brien ruled on Raab's motion to suppress, the issue before us on appeal.

Va. App. 168, 171, 622 S.E.2d 771, 772 (2005) (*en banc*).  On appeal, the facts developed in the

trial court must be reviewed "in the light most favorable to the Commonwealth, giving it the

benefit of any reasonable inferences."  Kyer v. Commonwealth, 45 Va. App. 473, 477, 612

S.E.2d 213, 215 (2005) (*en banc*) (citation omitted).

So viewed, the evidentiary record shows that a police officer patrolling Ocean View

Avenue at about 12:40 a.m. noticed a few vehicles in a restaurant parking lot.  The restaurant had

"closed" and was "shut down" for the night, with all lights turned off.  Posted signs warned that

the "parking lot was for patrons only" and that "towing was enforced."  In prior patrols, the

officer had seen vehicles parked there after the restaurant had closed.  Adjacent to the

Chesapeake Bay shoreline, the parking lot was sometimes used after hours by people going to

the beach despite the patrons-only restriction.

When the officer pulled into the lot, Raab began backing his vehicle out of a parking

space.  As he had on previous occasions when he suspected unauthorized vehicles in the

restaurant parking lot, the officer stopped Raab "to inquire why he was there after the business

was closed."  The officer immediately noticed an odor of alcohol coming from Raab.  His eyes

were glassy and red.  Raab said he had just gone "for a swim," but his hair and clothes were dry.

After Raab failed various field sobriety tests, the officer arrested him for driving under the

influence.  A later breath test showed a .15 blood alcohol content, nearly twice the legal limit.

In the trial court, Raab moved to suppress the evidence on the ground that the officer

unlawfully stopped him.  Raab's counsel acknowledged the officer "testified very credibly."

Counsel also admitted the restaurant was closed and its lights were off.  He then cited the general

trespassing statute, Code § 18.2-119, arguing that there can be no reasonable suspicion of

trespassing here because the posted signs did not expressly say "no trespassing."  Only a "clear

marking of no trespassing," counsel continued, meets the "standard for being able to enforce the

- 2 -

no trespassing law or the trespass offense." "I don't think we would have a case," he conceded, if the posted signs had been "no trespassing" signs.

The trial court denied Raab's motion to suppress. Because the posted signs specifically forbade access to "anybody but patrons," the court held, the officer could reasonably suspect Raab of trespassing given that the restaurant had closed and turned off its lights. In response to this ruling, Raab entered a conditional guilty plea stipulating to the sufficiency of the evidence and reserving his right to appeal the denial of his suppression motion.

II.

While an arrest requires probable cause, a mere investigatory stop requires only a "reasonable suspicion" that criminal activity "may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989), and Terry v. Ohio, 392 U.S. 1, 30 (1968)). The likelihood of criminality "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard" applicable in other contexts. Id. at 274 (citing Sokolow, 490 U.S. at 7); see also Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464-65 (2003) (summarizing standard as a reasonable suspicion the individual "may be involved in criminal activity" (citation omitted)).

The possibility of an innocent explanation for the suspicious conduct does not necessarily forbid an officer from making a brief, investigatory stop. See Arvizu, 534 U.S. at 274 (rejecting the "divide-and-conquer analysis"). Terry itself involved an officer observing Terry and his companions "repeatedly walk back and forth, look into a store window, and confer with one another." Arvizu, 534 U.S. at 274. "Although each of the series of acts was 'perhaps innocent in itself,'" collectively they were suspicious enough that a reasonable officer had grounds to stop Terry and his companions for purposes of investigating the situation further. Id. (quoting Terry,

392 U.S. at 22). Reasonable suspicion "need not rule out the possibility of innocent conduct." Id. at 277 (citing Illinois v. Wardlow, 528 U.S. 119, 125 (2000)). "Thus, there may be circumstances where wholly lawful conduct might justify the suspicion that criminal activity 'may be' afoot." Richards v. Commonwealth, 8 Va. App. 612, 617, 383 S.E.2d 268, 271 (1989) (citations omitted). As one commentator has explained:

> The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal — to "enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges."

4 Wayne R. LaFave, Search and Seizure § 9.5(b), at 482 (4th ed. 2004) (citations and footnote omitted). Given this practical focus, the Fourth Amendment bars only investigatory detentions based upon "inarticulate hunches" devoid of any arguably supportive factual basis. Terry, 392 U.S. at 22.

Equally true, the absence of probable cause plays no role in the Terry analysis. Given its animating principle of reasonableness, "the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." United States v. Montoya de Hernandez, 473 U.S. 531, 544 (1985) (quoting Adams v. Williams, 407 U.S. 143, 145 (1972)); see also Simmons v. Commonwealth, 217 Va. 552, 554, 231 S.E.2d 218, 220 (1977). To be sure, a "brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information" may represent the most reasonable response an officer can give under the circumstances. Simmons, 217 Va. at 554-55, 231 S.E.2d at 220 (quoting Adams, 407 U.S. at 146).

In this case, the factual circumstances justified a reasonable suspicion that Raab may have been trespassing. Code § 18.2-119 criminalizes trespass by those who go on the property of another "without authority of law" after "having been forbidden to do so" by a lawful possessor. The warning can be "either orally or in writing" or by "a sign or signs" posted by the lawful possessor. Code § 18.2-119. Nothing in the statute or in any interpretative caselaw requires, as Raab argues, that posted signs use the expression "no trespassing" or similar talismanic warning forbidding access.

Here, the posted signs warned that permission to use the parking lot was reserved "for patrons only" and added that non-patrons could expect a "towing enforced" response by the restaurateur. No facts suggested Raab was a patron. At 12:40 a.m., the restaurant had closed and all of the lights were off. A restaurant closed to patrons cannot be patronized, particularly one with its lights off during nighttime hours. It reasonably follows that Raab was likely a non-patron subject to the restaurant's patrons-only restriction on access to the parking lot.

Maybe so, Raab contends, but it is also possible he could have been the last employee leaving the restaurant that night turning off the lights on his way out the door. We do not deny this possibility. Truth be told, for all the officer knew, Raab could have been the restaurant owner himself calling in license plate numbers to the towing company. That the suspicion of trespassing could have been factually wrong, however, does not make it legally unreasonable.

The suspicious individuals walking up and down the sidewalk in Terry, after all, could simply have been innocuous, albeit overly energetic, window shoppers. But that hypothesis did not invalidate the Terry stop. See Sokolow, 490 U.S. at 9-10 (noting "Terry itself involved 'a series of acts, each of them perhaps innocent'" that nonetheless warranted further investigation when viewed collectively (citation omitted)). Under the Fourth Amendment, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that

- 5 -

attaches to particular types of *noncriminal* acts." Id. at 10 (emphasis added). And, in answering

that inquiry, "common sense and ordinary human experience" take precedence over legal

abstractions and rigid criteria. United States v. Sharpe, 470 U.S. 675, 685 (1985).[2]

Raab rejects this reasoning, arguing it has been displaced by a contrary view adopted in

Ewell v. Commonwealth, 254 Va. 214, 491 S.E.2d 721 (1997). We disagree. In that case, an

officer stopped a vehicle driving out of a residential apartment complex shortly after midnight.

Unfamiliar with the vehicle or its driver, the officer noticed that the vehicle had been parked in

an area known for drug dealing. Though a sign posted at the entrance of the apartment complex

barred trespassers, nothing suggested the driver was a trespasser. Ewell held no reasonable

suspicion of trespassing could arise under these circumstances.

We fail to see how the residential apartment complex in Ewell can be sensibly analogized

to a closed, unlit commercial restaurant. Apartment complexes do not close for the night.

Residents and guests come and go as they please. Restaurants, on the other hand, can and do

close to *everyone*. Patrons do not come and go from a closed, unlit restaurant in the middle of

the night. That fact alone, coupled with the patrons-only restriction, suggested Raab had no

authority to be there. The holding in Ewell, therefore, warranted a different conclusion because

---

[2] On brief, Raab contends the officer never explicitly testified that he stopped Raab to investigate a possible criminal "trespass" — his point being that an articulable suspicion under Terry must be specifically articulated by the officer from the witness stand. Not so. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" Brigham City v. Stuart, 126 S. Ct. 1943, 1948 (2006) (emphasis in original and citations omitted). "It is important to remember that 'we are not limited to what the stopping officer says or to evidence of his subjective rationale; rather, we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious.'" United States v. Brown, 232 F.3d 589, 594 (7th Cir. 2000) (citation omitted). Consequently, the "police officer conducting a stop is not required to 'precisely and individually articulate the facts that added up to suspicion in his mind.'" Id. (citation omitted).

- 6 -

it rested on fundamentally different circumstances — providing an apt illustration of the general rule that, "because the mosaic which is analyzed for a reasonable-suspicion or probable-cause inquiry is multifaceted, 'one determination will seldom be a useful precedent for another.'" <u>Ornelas v. United States</u>, 517 U.S. 690, 698 (1996) (citation omitted).[3]

III.

Because the trial court did not err in denying Raab's motion to suppress, we affirm his conviction for driving under the influence.

<u>Affirmed.</u>

---

[3] The same can be said of <u>Harris v. Commonwealth</u>, 262 Va. 407, 551 S.E.2d 606 (2001). The suspicion of trespassing was found unreasonable in <u>Harris</u> because the evidence merely showed "three persons standing and conversing near an apparent bus stop adjoining a public street at midday" in an apartment complex that forbid trespassers. <u>Id.</u> at 416, 551 S.E.2d at 610-11. The only circumstance suggesting the three were trespassing (in the middle of the day at an apparent bus stop) was that the police officers were not familiar with any of them. The facts of <u>Harris</u>, like <u>Ewell</u>, cannot be usefully analogized to a suspected trespasser seen after midnight in a parking lot of a closed, unlit commercial restaurant in which access has been expressly denied to anyone but patrons.

Humphreys, J., dissenting.

Because I believe that <u>Ewell v. Commonwealth</u>, 254 Va. 214, 491 S.E.2d 721 (1997), and <u>Harris v. Commonwealth</u>, 262 Va. 407, 551 S.E.2d 606 (2001), control the outcome of this case, I would hold that the trial court erred in denying Raab's motion to suppress. Accordingly, I respectfully dissent.

"A police officer may stop and detain a person 'for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.'" <u>Ford v. Commonwealth</u>, 28 Va. App. 249, 255, 503 S.E.2d 803, 805 (1998) (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 22 (1968)). "In order to justify the stop, the fourth amendment requires that the officer have a 'reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.'" <u>Woodson v. Commonwealth</u>, 14 Va. App. 787, 792, 421 S.E.2d 1, 4 (1992) (quoting <u>Moss v. Commonwealth</u>, 7 Va. App. 305, 307-08, 373 S.E.2d 170, 172 (1988)). In my view, appellate courts have occasionally blurred the distinction between probable cause to support an arrest or search and the much lesser standard of reasonable suspicion that a crime has occurred, is occurring, or is about to occur, thereby constitutionally justifying a brief investigative detention. Nevertheless, we are bound by the Supreme Court's decisions in <u>Ewell</u> and <u>Harris</u>.

In the present case, a police officer spotted three vehicles in the parking lot of a restaurant at 12:40 a.m. The restaurant "appeared" to be closed for the evening, and had a "patrons only/towing enforced" sign posted. The restaurant was not in the officer's normal patrol area, and the officer did not testify as to whether he knew what time the restaurant closed. The officer testified that he pulled into the lot to inquire why the individuals were in the parking lot after hours. As the officer pulled in to the parking lot, "[he] scanned the parking lot real quick and [Raab's] vehicle was backing out from the spot where he was." The officer then pulled up and parked perpendicular to Raab's vehicle to prevent him from exiting the lot in order to investigate

- 8 -

Raab's reason for being on the property.[4]  The Commonwealth argues, and the majority holds that the officer in this case had a reasonable, articulable suspicion to believe that Raab was trespassing.  Because of the precedent set forth in Ewell and Harris, I must disagree.

In Ewell, the Virginia Supreme Court held that a police officer was not justified in stopping and detaining the operator of a vehicle that he suspected of trespassing.  The officer worked part-time as a security guard for an apartment complex when he was off-duty.  Ewell, 254 Va. at 215, 491 S.E.2d at 722.  He was "employed primarily to enforce the complex's policy against trespassing."  Id.  At the entrance to the complex, there was a "ten-by-five foot, lighted sign stating 'no trespassing.'"  Id.  The officer testified that, "he was familiar with most of the complex's residents and their automobiles," and "was concerned because it was [12:30 in the morning] and the car was parked in front of an apartment suspected of 'high narcotics' trafficking."  Id. at 216, 491 S.E.2d at 722.  "Additionally, the operator of the car attempted to leave the parking lot immediately upon [the officer's] arrival in his marked vehicle."  Id.  Because the officer recognized neither Ewell nor her vehicle, he stopped the vehicle "to inquire whether its operator was trespassing."  Id.  The Court held that the officer's perceptions and suspicions were no more than a hunch, falling short of the reasonable, articulable suspicion required for a stop.  Id. at 217, 491 S.E.2d at 723.

In Harris, the Virginia Supreme Court held that a police officer was not justified in conducting a non-consensual stop of an individual that the officer believed was "possibly trespassing" at an apartment complex.  Harris, 262 Va. at 410, 551 S.E.2d at 607.  The officer was familiar with most residents of the apartment complex and their regular visitors because he had "worked for two and one-half years in a drug elimination program" at the complex.  Id.  A

_____

[4] The other vehicles left while the officer was conducting the stop of Raab's vehicle.

"no trespassing" sign was posted on at least one of the buildings in the complex.  Id.  The officer observed three men standing near a bench that had previously been used as a bus stop which was a "short distance" from the "no trespassing" sign.  Id.  The officer conducted a non-consensual stop of the men because he did not recognize them as residents or regular visitors of the complex and believed they were "possibly trespassing."  Id.  Citing Ewell, the Supreme Court of Virginia held that the officer "lacked a sufficient reasonable, articulable suspicion" that the individuals were trespassing.  Id. at 417, 551 S.E.2d at 611.  The Court compared the factual situation in Harris to that in Ewell, noting that "each officer had no more than an 'unparticularized suspicion or "hunch"' that criminal activity was afoot.  As such, each officer's subjective belief that the individual might be a trespasser was not sufficient to warrant a non-consensual investigatory detention."  Id. at 416, 551 S.E.2d at 611 (quoting (Terry, 392 U.S. at 27).

The majority attempts to distinguish the instant facts from those in Ewell.  The distinction the majority makes between this case and Ewell or, for that matter, Harris is, in my view, one without a difference.  In essence, the majority holds that because an apartment complex does not close and a restaurant does, it is more reasonable to assume that Raab was not lawfully in the parking lot.  In other words, the majority holds that Raab's mere presence in the parking lot of a closed restaurant at 12:40 in the morning is a sufficient "particularized and objective basis" for suspecting that Raab was trespassing.  The majority reasons that because "no facts suggested Raab was a patron," and because "a restaurant closed to patrons cannot be patronized . . . [i]t reasonably follows that Raab was likely a non-patron subject to the restaurant's patrons-only restriction on access to the parking lot."  Although this may be true, this singular fact, applied against the precedent set forth in Ewell and Harris, is insufficient as a matter of law to support a finding of reasonable suspicion.

In Ewell, the officer conducting the stop was familiar with most residents of the complex, and their vehicles, but he did not recognize Ewell or her car. He knew that the apartment in front of which the car was parked was a high drug-trafficking area. Furthermore, when the officer arrived in a marked car, Ewell immediately attempted to leave. Based on his knowledge and the attendant circumstances, the officer had several reasons to believe that Ewell was trespassing. However, the Virginia Supreme Court found that these facts were insufficient to support a reasonable suspicion that Ewell was trespassing.

In Harris, the officer making the stop was also familiar with the location where the stop occurred. He had been involved in a drug elimination program at the apartment complex for over two years. The officer knew most of the residents and their regular visitors but did not recognize Harris. The officer saw Harris and two other men loitering near a bus stop that was no longer in use. In other words, the bus stop was closed. Based on that knowledge, the officer believed that Harris was "possibly trespassing." However, the Virginia Supreme Court held that the facts were insufficient to support a reasonable suspicion that Harris was trespassing. In both Ewell and Harris, the Supreme Court held that the information available to the officer could give rise to no more than a "hunch" that the suspected individuals were trespassing.

In this case, the officer's only basis for reasonable suspicion was that Raab was leaving the parking lot of an apparently closed restaurant. However, unlike in Ewell, there is no evidence that Raab's attempt to leave was in response to the officer's arrival. Furthermore, unlike the officers in both Ewell and Harris, the officer here was not particularly familiar with the location of the stop. The restaurant was not in the officer's "normal patrol" area. The record also does not indicate what time the restaurant closed or that the officer had that information available to him. When the officer arrived, Raab was pulling out of his parking spot and the two

other vehicles were apparently preparing to leave as well.[5]  As such, it is equally likely, in viewing the totality of the circumstances, that Raab was the restaurant's owner, an employee, or a late departing patron and, thus, lawfully on the premises.  Thus, it is apparent that the officer here had even less reason to be suspicious of criminal activity than the officers in Ewell and Harris.

Because an officer's familiarity with the residents of a complex, and the presence of drug-trafficking, coupled with the defendant's attempt to leave the complex upon the officer's arrival, is insufficient to support a finding of reasonable suspicion, see Ewell, 254 Va. 214, 491 S.E.2d 721; Harris, 262 Va. at 410, 551 S.E.2d at 607, I do not believe that the facts in this case rise any higher than a similar "hunch."  Accordingly, I would hold that under Ewell and Harris, the trial court erred in denying the motion to suppress, and I would reverse and remand for a new trial if the Commonwealth be so advised.

---

[5] Both of the other vehicles left while the officer spoke with Raab.

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **5th** *day of* **June, 2007**.

George Edward Raab,                                                                          Appellant,

 against              Record No. 0972-06-1
                      Circuit Court No. CR05-4269

Commonwealth of Virginia,                                                                    Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Felton, Judges Benton, Elder, Frank, Humphreys, Clements, Kelsey, McClanahan, Haley, Petty, and Beales

On May 14, 2007 came the appellant, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on May 1, 2007, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on May 1, 2007 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established:  Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellee shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellee's brief is filed.  The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the appellant shall file twelve additional copies of the appendix previously filed in this case.

A Copy,
                          Teste:
                                          Cynthia L. McCoy, Clerk
                          By:
                                          Deputy Clerk

Present:   Judges Humphreys, Kelsey and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


GEORGE EDWARD RAAB

                                                           OPINION BY
v.        Record No. 0972-06-1                    JUDGE D. ARTHUR KELSEY
                                                            MAY 1, 2007
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                              A. Bonwill Shockley, Judge[1]

               David Michael Good (Anderson & Good, P.C., on brief), for
               appellant.

               Rosemary V. Bourne, Assistant Attorney General (Robert F.
               McDonnell, Attorney General; Karri B. Atwood, Assistant
               Attorney General, on brief), for appellee.


       The trial court convicted George Edward Raab of driving under the influence, his third or

subsequent offense, in violation of Code § 18.2-266.  See also Code § 18.2-270 (codifying

recidivism penalty).  On appeal, Raab contends the evidence of his guilt should have been

suppressed because the arresting officer had no legal basis to detain him in the first place.  The

trial court disagreed, as do we.

                                              I.

       Under settled principles, we address the legal issues arising from a suppression motion

"only after the relevant historical facts have been established."  Logan v. Commonwealth, 47

Va. App. 168, 171, 622 S.E.2d 771, 772 (2005) (en banc).  On appeal, the facts developed in the

trial court must be reviewed "in the light most favorable to the Commonwealth, giving it the

_____

       [1] Judge Shockley entered the final conviction and sentencing order.  Judge William R.
O'Brien ruled on Raab's motion to suppress, the issue before us on appeal.

benefit of any reasonable inferences." Kyer v. Commonwealth, 45 Va. App. 473, 477, 612 S.E.2d 213, 215 (2005) (*en banc*) (citation omitted).

So viewed, the evidentiary record shows that a police officer patrolling Ocean View Avenue at about 12:40 a.m. noticed a few vehicles in a restaurant parking lot. The restaurant had "closed" and was "shut down" for the night, with all lights turned off. Posted signs warned that the "parking lot was for patrons only" and that "towing was enforced." In prior patrols, the officer had seen vehicles parked there after the restaurant had closed. Adjacent to the Chesapeake Bay shoreline, the parking lot was sometimes used after hours by people going to the beach despite the patrons-only restriction.

When the officer pulled into the lot, Raab began backing his vehicle out of a parking space. As he had on previous occasions when he suspected unauthorized vehicles in the restaurant parking lot, the officer stopped Raab "to inquire why he was there after the business was closed." The officer immediately noticed an odor of alcohol coming from Raab. His eyes were glassy and red. Raab said he had just gone "for a swim," but his hair and clothes were dry. After Raab failed various field sobriety tests, the officer arrested him for driving under the influence. A later breath test showed a .15 blood alcohol content, nearly twice the legal limit.

In the trial court, Raab moved to suppress all evidence of his guilt on the ground that the officer unlawfully stopped him. Raab's counsel acknowledged the officer "testified very credibly." Counsel also admitted the restaurant was closed and its lights were off. He then cited the general trespassing statute, Code § 18.2-119, arguing that there can be no reasonable suspicion of trespassing here because the posted sign did not expressly say "no trespassing." Only a "clear marking of no trespassing," counsel continued, meets the "standard for being able to enforce the no trespassing law or the trespass offense." "I don't think we would have a case," he conceded, if the posted sign had been a "no trespassing" sign.

The trial court denied Raab's motion to suppress. Because the posted signs specifically forbade access to "anybody but patrons," the court held, the officer could reasonably suspect Raab of trespassing given that the restaurant had closed and turned off its lights. In response to this ruling, Raab entered a conditional guilty plea stipulating to the sufficiency of the evidence and preserving his right to appeal the denial of his suppression motion.

## II.

While an arrest requires probable cause, a mere investigatory stop requires only a "reasonable suspicion" that criminal activity "may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989), and Terry v. Ohio, 392 U.S. 1, 30 (1968)). The likelihood of criminality "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard" applicable in other contexts. Id. at 274 (citing Sokolow, 490 U.S. at 7); see also Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464-65 (2003) (summarizing standard as a reasonable suspicion the individual "may be involved in criminal activity" (citation omitted)).

The possibility — even a more-likely-than-not probability — of an innocent explanation for the conduct does not necessarily forbid an officer from making a brief, investigatory stop. See Arvizu, 534 U.S. at 274 (rejecting the "divide-and-conquer analysis"). Terry itself involved an officer observing Terry and his companions "repeatedly walk back and forth, look into a store window, and confer with one another." Arvizu, 534 U.S. at 274. "Although each of the series of acts was 'perhaps innocent in itself,'" collectively they were suspicious enough that a reasonable officer had grounds to stop Terry and his companions for purposes of investigating the situation further. Id. (quoting Terry, 392 U.S. at 22).

Reasonable suspicion, therefore, "need not rule out the possibility of innocent conduct." Id. at 277 (citing Illinois v. Wardlow, 528 U.S. 119, 125 (2000)). "Thus, there may be circumstances where wholly lawful conduct might justify the suspicion that criminal activity 'may be' afoot." Richards v. Commonwealth, 8 Va. App. 612, 617, 383 S.E.2d 268, 271 (1989) (citations omitted). The Fourth Amendment bars only investigatory detentions based upon "inarticulate hunches" devoid of any arguably supportive factual basis. Terry, 392 U.S. at 22.[2]

In this case, the factual circumstances justified a reasonable suspicion that Raab may have been trespassing. Code § 18.2-119 criminalizes trespass by those who go on the property of another "without authority of law" after "having been forbidden to do so" by a lawful possessor. The warning can be "either orally or in writing" or "by a sign or signs" posted by the lawful possessor. Code § 18.2-119. Nothing in the statute or in any interpretative caselaw requires, as Raab argues, that posted signs use the words "no trespassing" or a similar talismanic expression.[3]

Here, the posted signs warned that permission to use the parking lot was reserved "for patrons only," adding that non-patrons could expect a "towing enforced" response by the restaurateur. No facts suggested Raab was a patron. At 12:40 a.m., the restaurant had closed and all of the lights were off. A restaurant closed to patrons cannot be patronized, particularly one with its lights off during nighttime hours. It reasonably follows that Raab was likely a non-patron subject to the restaurant's patrons-only restriction on access to the parking lot.

---

[2] See also Shiflett v. Commonwealth, 47 Va. App. 141, 146, 622 S.E.2d 758, 760-61 (2005); Alston v. Commonwealth, 40 Va. App. 728, 739-40, 581 S.E.2d 245, 250-51 (2003); McGee v. Commonwealth, 25 Va. App. 193, 202, 487 S.E.2d 259, 263 (1997) (*en banc*); Logan v. Commonwealth, 19 Va. App. 437, 441-42, 452 S.E.2d 364, 367 (1994) (*en banc*).

[3] A sign must be posted "at a place or places where it or they may be reasonably seen" by those subject to the access limitations. Code § 18.2-119. At oral argument on appeal, Raab suggested the patrons-only signs could not be reasonably seen. Because he never raised that issue in the trial court, we need not address it on appeal. See Rule 5A:18.

Maybe so, Raab contends, but it is also possible he could have been the last employee leaving the restaurant that night turning off the lights on his way out the door. We do not deny this possibility. Truth be told, for all the officer knew, Raab could have been the restaurant owner himself calling in license plate numbers to the towing company. That the suspicion of trespassing could have been factually wrong, however, does not make it legally unreasonable. The suspicious individuals walking up and down the sidewalk in <u>Terry</u>, after all, could simply have been innocuous, albeit overly energetic, window shoppers. But that hypothesis did not invalidate the <u>Terry</u> stop. <u>See</u> <u>Sokolow</u>, 490 U.S. at 9-10 (noting "<u>Terry</u> itself involved 'a series of acts, each of them perhaps innocent'" that nonetheless warranted further investigation when viewed collectively (citation omitted)). Under the Fourth Amendment, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." <u>Id.</u> at 10.[4]

Raab rejects this reasoning, arguing it has been displaced by a contrary view adopted in <u>Ewell v. Commonwealth</u>, 254 Va. 214, 491 S.E.2d 721 (1997). We disagree. In that case, an officer stopped a vehicle driving out of a residential apartment complex shortly after midnight. Unfamiliar with the vehicle or its driver, the officer noticed that the vehicle had been parked in

---

[4] On brief, Raab contends the officer never explicitly testified that he stopped Raab to investigate a possible criminal "trespass" — his point apparently being that an articulable suspicion under <u>Terry</u> must be specifically articulated by the officer from the witness stand. Not so. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" <u>Brigham City v. Stuart</u>, 126 S. Ct. 1943, 1948 (2006) (emphasis in original and citations omitted). "It is important to remember that 'we are not limited to what the stopping officer says or to evidence of his subjective rationale; rather, we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious.'" <u>United States v. Brown</u>, 232 F.3d 589, 594 (7th Cir. 2000) (citation omitted). Consequently, the "police officer conducting a stop is not required to 'precisely and individually articulate the facts that added up to suspicion in his mind.'" <u>Id.</u>

- 5 -

an area known for drug dealing. Though a sign posted at the entrance of the apartment complex barred trespassers, nothing suggested the driver was a trespasser. <u>Ewell</u> held no reasonable suspicion of trespassing could arise under these circumstances.

We fail to see how the residential apartment complex in <u>Ewell</u> can be sensibly analogized to a closed, unlit commercial restaurant. Apartment complexes do not close for the night. Residents and guests come and go as they please. Restaurants, on the other hand, can and do close to *everyone*. Patrons do not come and go from a closed, unlit restaurant in the middle of the night. That fact alone, coupled with the patrons-only restriction, suggested Raab had no authority to be there. The holding in <u>Ewell</u>, therefore, warranted a different conclusion because it rested on fundamentally different circumstances — providing an apt illustration of the general rule that, "because the mosaic which is analyzed for a reasonable-suspicion or probable-cause inquiry is multifaceted, 'one determination will seldom be a useful precedent for another.'" <u>Ornelas v. United States</u>, 517 U.S. 690, 698 (1996) (citation omitted).

### III.

Because the trial court did not err in denying Raab's motion to suppress, we affirm his conviction for driving under the influence, his third or subsequent offense, in violation of Code § 18.2-266.

<u>Affirmed.</u>

Humphreys, J., dissenting.

Because I believe that <u>Ewell v. Commonwealth</u>, 254 Va. 214, 491 S.E.2d 721 (1997), controls the outcome of this case, I would hold that the trial court erred in denying Raab's motion to suppress. Accordingly, I respectfully dissent.

Reasonable, articulable suspicion to support an investigative detention must be based on objective facts, <u>Zimmerman v. Commonwealth</u>, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988), and whether a police officer had a "particularized and objective basis" for suspecting that the person seized was engaged in some form of criminal activity is considered in light of the totality of the circumstances. <u>Ewell</u>, 254 Va. at 217, 491 S.E.2d at 723.

In <u>Ewell</u>, the Virginia Supreme Court held that an off-duty police officer working as a security guard in an apartment complex was not justified in stopping and detaining the operator of a vehicle leaving the complex's parking lot. The officer testified that, "he was familiar with most of the complex's residents and their automobiles," and "was concerned because it was very early [in the morning] and the car was parked in an area suspected of 'high narcotics' trafficking." <u>Id.</u> at 216, 491 S.E.2d at 722. "Additionally, the operator of the car attempted to leave the parking lot immediately upon [the officer's] arrival in his marked vehicle." <u>Id.</u> And because the officer recognized neither Ewell nor her vehicle, he stopped the vehicle "to inquire whether its operator was trespassing." <u>Id.</u> The Court held that the officer's perceptions and suspicions were no more than a hunch, falling short of the reasonable, articulable suspicion required for a stop. <u>Id.</u> at 217, 491 S.E.2d at 723. Moreover, the Court found that Ewell "acted as any other person might have acted under similar circumstances." <u>Id.</u>

In the present case, the officer spotted three vehicles in the parking lot of a restaurant at 12:40 a.m. The restaurant "appeared" to be closed for the evening, and had a "patrons only/towing enforced" sign posted. The officer testified that he pulled into the lot to inquire why

the individuals were in the parking lot after hours. As the officer pulled in to the parking lot, "[he] scanned the parking lot real quick and [Raab's] vehicle was backing out from the spot where he was." The officer then pulled up and parked perpendicular to Raab's vehicle to prevent him from exiting the lot.[5] The Commonwealth argues,[6] and the majority holds that these facts are sufficient to support the claim that the officer had a reasonable, articulable suspicion to believe that Raab was engaged in criminal activity. Because of the precedent set forth in Ewell, I must disagree.

In my view, appellate courts have occasionally blurred the distinction between probable cause to support an arrest or search, and the much lesser standard of reasonable suspicion that a crime has occurred, is occurring, or is about to occur, thereby constitutionally justifying a brief detention and investigation. Nonetheless, Ewell is binding on this Court and the distinction advanced by the majority, in my view, is one without a difference. In essence, the majority holds that because an apartment complex like that in Ewell does not close, and a restaurant does, it is more reasonable to assume that Raab was not lawfully in the parking lot. In other words, Raab's mere presence in the parking lot of a closed restaurant is a sufficient "particularized and

---

[5] The other vehicles left while the officer was conducting the stop of Raab's vehicle.

[6] The Commonwealth maintains that the objective facts available to the officer, taken in their entirety, support the trial court's conclusion that the stop was lawful. Citing United States v. Briggman, 931 F.2d 705 (11th Cir. 1991), the Commonwealth makes much of the fact that Raab was parked in the lot of a business that appeared to be closed. However, in Briggman, the fact that the defendant was parked in a closed lot was only one of many factors suggesting that criminal activity was afoot. Specifically, the Eleventh Circuit found that, because Briggman "was parked in a parking lot at 4:00 a.m. in a high crime area, when commercial establishments served by the lot were closed for the night," and because "in departing the parking lot, Briggman attempted to evade the officer," the stop was justified. Id. at 709. Thus, Briggman's mere presence alone was not the basis for the court's holding. Rather, Brigmann's presence, the location, the time of night, and Brigmann's attempt to evade the officer, were sufficient to find that the officer had reasonable suspicion to believe that criminal activity was afoot.

objective basis" for suspecting that Raab was engaged in some form of criminal activity, specifically trespassing. The majority reasons that because "[n]o facts suggested Raab was a patron," and because "a restaurant closed to patrons cannot be patronized . . . [i]t reasonably follows that Raab was likely a non-patron subject to the restaurant's patrons-only restriction on access to the parking lot." Although this may well be true, this singular fact, applied against the precedent set forth in Ewell, is insufficient as a matter of law to support a finding of reasonable suspicion.

In Ewell, the officer conducting the stop was familiar with most of the residents in the complex, as well as their vehicles. He also knew that the area in which the car was parked was a high drug-trafficking area. Moreover, when the officer pulled into the complex, Ewell attempted to leave. Because of this knowledge, and the attendant circumstances, the officer had reason to believe that Ewell was not a resident, and thus, detained Ewell long enough to investigate his suspicion that Ewell was trespassing on private property. However, the Virginia Supreme Court found that these facts were insufficient to support a reasonable suspicion that Ewell was engaged in criminal activity, specifically trespassing. Said differently, the Court found that these facts, without more, amounted to a mere "hunch" that Ewell was unlawfully on the property.

In this case, the only fact even remotely supporting the assertion that Raab was unlawfully on the premises, or otherwise engaged in criminal activity, is that fact that the restaurant appeared to be closed. However, there were two other vehicles in the lot at the time of the seizure. Moreover, the record does not indicate what time the restaurant closed, or that the officer had that information available to him. As such, it is equally likely, in viewing the totality of the circumstances, that Raab could have been the restaurant's owner, an employee, or a late departing patron and thus, was lawfully on the premises. And even though reasonable suspicion "need not rule out the possibility of innocent conduct," United States v. Arvizu, 534 U.S. 266,

277 (2002), the facts available to the officer at the time of the stop must still give rise to more than an "inchoate and unparticularized suspicion or 'hunch," <u>Terry v. Ohio</u>, 392 U.S. 1, 27 (1968).

Because an officer's familiarity with the residents of a complex, and the presence of drug-trafficking, coupled with the defendant's attempt to leave the complex upon the officer's arrival, is insufficient to support a finding of reasonable suspicion, <u>see</u> <u>Ewell</u>, 254 Va. 214, 491 S.E.2d 721, I do not believe that the facts in this case rise any higher than a similar "hunch." Accordingly, I would hold that under the holding in <u>Ewell</u>, the trial court erred in denying the motion to suppress, and I would reverse and remand for a new trial if the Commonwealth be so advised.