[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14057

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

GUSTAVO ALBRIZA, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:20-cr-00012-AW-GRJ-1

_____

Before LUCK, BRASHER, and EDMONDSON, Circuit Judges.

PER CURIAM:

Gustavo Albriza, Jr., appeals his convictions for possessing with intent to distribute methamphetamine and a mixture containing heroin and fentanyl and for being a felon in possession of ammunition. On appeal, Albriza challenges the district court's denial of his motion to suppress evidence seized during a traffic stop. No reversible error has been shown; we affirm.

## I.

In March 2021, Deputy Jeffrey Stadnicki was on patrol in a high-crime area of Fairbanks, Florida. Deputy Stadnicki observed Albriza at a gas station with two other persons, including Crystal Cummings: a woman known to Deputy Stadnicki as a local drug dealer. A couple of weeks earlier, Deputy Stadnicki had received a tip "that a white Hispanic male with tattoos from Ocala was supplying Crystal Cummings with methamphetamine." Albriza's physical appearance matched this description.

Deputy Stadnicki ran a search on the tag on the car Albriza was driving and discovered that the tag was assigned to a different vehicle. Deputy Stadnicki continued to observe Albriza as Albriza drove out of the gas station. Shortly thereafter, Albriza failed to stop properly at an intersection. Deputy Stadnicki stopped the car. Deputy Stadnicki also called for backup.

At 5:44 PM, Deputy Stadnicki instructed Albriza to get out of the car. Deputy Stadnicki told Albriza that one reason for the stop was because the tag was not assigned to the car Albriza was driving. Albriza confirmed that he knew the tag did not match the car. Albriza said he lost the title for the car and was thus unable to register the car in his name or update the tag. The only documentation Albriza provided for the car was an insurance card with another person's name on it.

Albriza also gave inconsistent information about the owner of the car. Albriza first said he bought the car from his friend "Zay" (a male) but could not provide Zay's full name. After running the VIN number on the vehicle, Deputy Stadnicki learned that the car's owner was listed as a woman with the last name "Calvin." Albriza later said that he bought the car from "Zay's aunt." Never did Albriza mention "Calvin."

After determining that the car had not been reported stolen, Deputy Stadnicki told Albriza he was going to issue three written warning citations: for having an unassigned tag, for stopping improperly, and for failing to change the address on his driver's license. While writing the citations, Deputy Stadnicki continued asking Albriza questions, including questions about how Albriza came to possess the car.

At 6:18 PM -- while Deputy Stadnicki was still completing the written citations -- a K-9 unit arrived on the scene. Deputy Stadnicki asked one of the backup officers to finish the citations. Deputy Stadnicki then ordered the two passengers out of the car.

An officer walked the police dog around the vehicle, and the dog alerted immediately to the presence of narcotics.  Then, Deputy Stadnicki searched the vehicle and discovered a large quantity of methamphetamine and fentanyl.  Officers also found a bullet in Albriza's pocket.  An arrest was made.

Albriza moved to suppress the drugs and the bullet seized during the traffic stop.  Albriza conceded that the initial traffic stop was lawful but argued that Deputy Stadnicki prolonged unlawfully the traffic stop to wait for the K-9 unit to arrive.  Following a suppression hearing, the district court denied Albriza's motion.  The district court determined that the traffic stop lasted no longer than necessary to address its initial mission.  In the alternative, the district court also determined that -- to the extent the stop was prolonged -- reasonable suspicion existed to justify the extension.

Albriza entered a conditional guilty plea, reserving his right to appeal the district court's denial of his motion to suppress.  The district court sentenced Albriza to imprisonment followed by some supervised release.

## II.

We review the district court's denial of "a motion to suppress evidence under a mixed standard, reviewing the court's findings of fact for clear error and the application of law to those facts *de novo*, construing the facts in the light most favorable to the prevailing party below."  *See United States v. Pierre*, 825 F.3d 1183, 1191 (11th Cir. 2016).  We review *de novo* a district court's

determinations about reasonable suspicion.  *See Ornelas v. United States*, 517 U.S. 690, 699 (1996).

In this appeal, we consider only whether the duration of the traffic stop was lawful.  At the motion-to-suppress hearing, Albriza said expressly that he raised no argument challenging the lawfulness of the initial traffic stop.  Albriza concedes -- and we agree -- that Albriza has thus waived that argument.  Nor does Albriza challenge the lawfulness of the dog sniff itself: Albriza argues only that Deputy Stadnicki prolonged the traffic stop to give time for the K-9 unit to arrive.

When an officer makes a lawful traffic stop, he does not have "unfettered authority to detain a person indefinitely."  *United States v. Campbell*, 26 F.4th 860, 881 (11th Cir. 2022) (*en banc*).  A traffic stop "is unlawfully prolonged when an officer, without reasonable suspicion, diverts from the stop's purpose and adds time to the stop in order to investigate other crimes."  *Id*. at 884.  The purpose of the traffic stop includes addressing the traffic violation that prompted the stop and attending to "related safety concerns."  *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  An officer's mission during a traffic stop includes "ordinary inquiries incident to the traffic stop" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."  *Id*. at 355 (brackets omitted).  "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly."  *Id*.

A.

On appeal, Albriza contends that Deputy Stadnicki prolonged unlawfully the duration of the traffic stop (1) by frisking Albriza, (2) by asking questions about Albriza's destination, (3) by asking questions about the car's ownership after learning that the car had not been reported stolen, (4) by asking questions of Albriza while writing the warning citations, and (5) by failing to seek more assistance from the backup officers.

Viewing the evidence in the light most favorable to the government, we cannot conclude that Deputy Stadnicki prolonged unlawfully the traffic stop. First, Deputy Stadnicki was permitted to conduct a brief pat-down search of Albriza's person. *See United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) ("[O]fficers conducting a traffic stop may 'take such steps as are reasonably necessary to protect their personal safety,'" including "conducting a protective search of the driver.").

Further, the questions Deputy Stadnicki asked about Albriza's destination and about the car's ownership were questions related reasonably to the purpose of the traffic stop. *See Rodriguez*, 575 U.S. at 355 (ordinary inquiries incident to a traffic stop include "inspecting the automobile's registration and proof of insurance"); *Campbell*, 26 F.4th at 885 ("Generally speaking, questions about travel plans are ordinary inquiries incident to a traffic stop."); *United States v. Braddy*, 11 F.4th 1298, 1311 (11th Cir. 2021) (determining that questions about the car's ownership were "well within the scope of the traffic stop"); *United States v. Holt*, 777 F.3d

21-14057          Opinion of the Court          7

1234, 1256 (11th Cir. 2015) ("[A]n officer may prolong a traffic stop to investigate the driver's license and the vehicle registration.").

That the car had not been reported stolen did not resolve conclusively that Albriza was in lawful possession of the car. Given Albriza's inability to provide proof of registration and Albriza's conflicting answers about the identity of the person from whom he supposedly bought the car, Deputy Stadnicki's inquiries about the car's true owner -- even after learning that the car was not reported stolen -- fell within the scope of the traffic stop's mission.

We also reject Albriza's argument that Deputy Stadnicki prolonged unlawfully the traffic stop by not delegating more tasks to the backup officers. The backup officers were called to the scene chiefly to avoid having Deputy Stadnicki outnumbered by the car's three occupants: a purpose related to officer safety. The backup officers also assisted Deputy Stadnicki by escorting Albriza to re-trieve his cell phone and by completing the written warnings after the K-9 unit arrived. That Deputy Stadnicki performed many of the routine traffic-related tasks himself is no evidence that he failed to act "diligently" and "expeditiously."

The stop has not been shown to have been too long.

B.

Albriza next challenges the district court's separate determi-nation that any prolongation of the stop was justified by reasonable suspicion of other criminal activity.

In deciding whether reasonable suspicion existed at the pertinent time, we "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *See United States v. Arvizu*, 534 U.S. 266, 273 (2002). We consider whether reasonable suspicion existed objectively under the circumstances: an officer's subjective motivations are immaterial to whether a traffic stop is reasonable under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

Police may rely "on their own experience and specialized training to make inferences from and deductions" about the information before them, and we "give due weight to the officer's experience" when examining the totality of the circumstances. *See United States v. Lindsey*, 482 F.3d 1285, 1290-91 (11th Cir. 2007); *United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991). Reasonable suspicion need not be based solely on an officer's personal observations; information supplied by a third person may also give rise to reasonable suspicion justifying an investigatory stop if the information bears "sufficient indicia of reliability." *See Navarette v. California*, 572 U.S. 393, 397 (2014).

The totality of the circumstances involved in this case, viewed in the light most favorable to the government, gave rise to reasonable suspicion that Albriza was involved in criminal activity beyond the initial traffic violation. Deputy Stadnicki had received an earlier confidential tip that a person matching Albriza's physical description was supplying a known drug dealer (Cummings) with

methamphetamine. Albriza and Cummings were then together in a high-crime area. Shortly after being stopped, Albriza confirmed that he was from Ocala: information that corroborated another detail from the confidential tip.

Albriza appeared unusually nervous during the stop. Albriza told Deputy Stadnicki that he was headed to Cummings's home but declined to identify Cummings by name. Albriza also admitted that the tag attached to the car was not assigned to that car: a tactic Deputy Stadnicki recognized based on his training and experience as indicative of drug-trafficking or other criminal activity. Albriza was also unable to produce proof of ownership of the car and gave conflicting stories about the car's owner.

Given these circumstances, an objective officer in Deputy Stadnicki's position would have a particularized and objective basis to suspect that the car might be stolen and that Albriza was involved in drug-trafficking activity. Thus -- even to the extent Deputy Stadnicki's repeated inquiries about the car's owner constituted questions aimed at investigating criminal activity beyond the initial traffic infraction -- Deputy Stadnicki by then had reasonable suspicion to justify extending the stop to conduct further investigation. Those questions, thus, could not prolong unlawfully the traffic stop.

The district court committed no error in denying Albriza's motion to suppress. We affirm Albriza's conviction.

AFFIRMED.