Present:  Carrico, C.J., Compton, Stephenson,[*] Lacy, Hassell, and
          Keenan, JJ., and Whiting, Senior Justice

VIRGINIA ANN EWELL
                         OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.
v. Record No. 962304
                                        September 12, 1997
COMMONWEALTH OF VIRGINIA

               FROM THE COURT OF APPEALS OF VIRGINIA


     The sole issue in this appeal is whether a police officer,
who stopped and detained an operator of an automobile, had a
reasonable articulable suspicion that the operator may be engaged
in criminal activity.

     Virginia Ann Ewell was indicted in the Circuit Court of the
City of Virginia Beach for possession of cocaine in violation of
Code § 18.2-250.  Ewell moved the trial court to suppress the
evidence obtained as a result of the stop, asserting that the
stop and her seizure were without a reasonable suspicion that she
may have been engaged in criminal activity.  The trial court
denied the motion.  Following a bench trial, Ewell was found
guilty of cocaine possession and sentenced to five years'
imprisonment, with execution of the entire sentence suspended.
The Court of Appeals, in an unpublished opinion, affirmed the
trial court's judgment, and we awarded Ewell this appeal.

     The material facts are undisputed.  Andrew J. Spiess, a
police officer for the City of Virginia Beach, worked part time
in his off-duty hours as a security officer at an apartment
complex.  Spiess was employed primarily to enforce the complex's
_____

     [*]Justice Stephenson prepared the opinion in this case prior
to the effective date of his retirement on July 1, 1997, and the
Court subsequently adopted the opinion.

policy against trespassing.  The complex's parking lot had only one access, and it was posted with a ten-by-five foot, lighted sign, stating "no trespassing."

On December 4, 1993, about 12:30 a.m., Spiess drove a marked police vehicle into the complex parking lot.  Spiess was dressed in his police uniform.

As Spiess entered the parking lot, he observed a blue 1986 Oldsmobile parked next to an apartment suspected of being the site of narcotics activity.  Spiess focused attention on the Oldsmobile because, while he was familiar with most of the complex's residents and their automobiles, he did not recognize the vehicle.  Spiess testified that he was concerned because it was very early and the car was parked in an area suspected of "high narcotics" trafficking.  Additionally, the operator of the car attempted to leave the parking lot immediately upon Spiess' arrival in his marked vehicle.  As the Oldsmobile approached, Spiess saw the driver whom he did not recognize as a resident of the apartment complex.  Based upon these observations, Spiess decided to stop the vehicle to inquire whether its operator was trespassing.  By this time, the vehicle had exited the parking lot onto a public street.

Spiess activated the flashing blue lights on the police vehicle and stopped the Oldsmobile on the street.  Spiess then approached the stopped vehicle and ascertained that Ewell was the operator.

Thereafter, Spiess used his flashlight to illuminate the interior of the car.  In the car, Spiess saw a beer can that "had been fashioned in such a way that it gave the appearance of something that would be used, in his experience, to smoke crack cocaine."  According to Spiess, "[t]he beer can had been crushed and dented and small holes placed in it with darkened residue." Spiess "believed that he was observing a homemade crack pipe."

Spiess also saw a wooden clothespin in an open purse.  The clothespin was charred at one end, and Spiess testified that, based on his experience, the clothespin "was an item commonly used to hold a crack pipe when it became too hot to hold with the hand."

Ewell admitted owning the purse.  Ewell also admitted that a search of the purse would reveal a crack pipe.  Spiess then searched the purse and recovered "two homemade crack pipes or stems with burnt residue that he believed to be . . . cocaine." The seized items tested positive for cocaine.

The Fourth Amendment to the Constitution of the United States provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  Two types of seizures of the person are protected by the Fourth Amendment--an arrest and an investigatory stop. Terry v. Ohio, 392 U.S. 1 (1968); see Baldwin v. Commonwealth, 243 Va. 191, 195, 413 S.E.2d 645, 647 (1992); Zimmerman v. Commonwealth,

234 Va. 609, 611-12, 363 S.E.2d 708, 709 (1988); Leeth v. Commonwealth, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982). A police officer may seize a person by an arrest only when the officer has probable cause to believe that the person seized has committed or is committing a crime. Dunaway v. New York, 442 U.S. 200, 207-09 (1979); see Baldwin, 243 Va. at 195, 413 S.E.2d at 647. In order to justify the brief seizure of a person by an investigatory stop, a police officer need not have probable cause; however, he must have "a reasonable suspicion, based on objective facts, that the [person] is involved in criminal activity." Brown v. Texas, 443 U.S. 47, 51 (1979); accord Zimmerman, 234 Va. at 611, 363 S.E.2d at 709; Leeth, 223 Va. at 340, 288 S.E.2d at 478. In determining whether a police officer had a particularized and objective basis for suspecting that the person stopped may be involved in criminal activity, a court must consider the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417-18 (1981); see Zimmerman, 234 Va. at 612, 363 S.E.2d at 709; Leeth, 223 Va. at 340, 288 S.E.2d at 478.

In the present case, considering the totality of the circumstances and viewing the facts in the light most favorable to the Commonwealth, we do not think Officer Spiess had a reasonable suspicion that Ewell may have been engaged in trespassing or any other criminal activity. Officer Spiess merely observed an unfamiliar automobile and its operator in the parking lot of the apartment complex about 12:30 a.m. Although

- 4 -

the automobile was parked in an area suspected of "high narcotics" trafficking and it exited the parking lot upon Spiess' arrival in a police vehicle, nothing about Ewell's conduct was suspicious. Indeed, Ewell acted as any other person might have acted under similar circumstances. Consequently, we hold that Ewell was seized in violation of her Fourth Amendment rights. Therefore, the trial court erred in failing to suppress the evidence obtained as a result of Ewell's seizure, and the Court of Appeals erred in affirming the trial court's judgment.

Accordingly, we will reverse the judgment of the Court of Appeals and enter final judgment vacating the conviction and dismissing the indictment.

<u>Reversed and final judgment</u>.