## CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

v.

Marcus Lavon Simms

November 17, 1997

Case No. (Criminal) 11062

BY JUDGE JAMES H. CHAMBLIN

On November 6, 1997, the Court heard evidence and argument on the defendant's Motion to Suppress and Supplemental Motion to Suppress. After consideration thereof, the Motions are denied for the reasons that follow.

### Facts

At approximately 10:30 p.m. on July 10, 1997, K-9 Officer Scott Warner of the Leesburg Police Department was on routine patrol. He entered the Hunters Crossing apartment complex in his marked vehicle with his dog. In his eleven years on the police force, he has patrolled this apartment complex over 500 times. The complex is a high drug area in the Town of Leesburg.

In a dark area of the parking lot, Officer Warner observed a white vehicle parked facing the curb with its lights off. It was parked away from other vehicles. The closest apartment building was fifty to one hundred feet away. He observed two persons in the white vehicle.

After observing the white vehicle for thirty seconds to a minutes, Officer Warner pulled his vehicle to the rear of the white vehicle. He observed no criminal activity before he approached the vehicle. He approached the driver's side and shined his flashlight into the interior of the white vehicle. He saw a black female in the driver's seat and the defendant, a black male, in the front passenger seat.

In a calm tone of voice, Officer Warner said to the occupants, "How you doing? Why are you sitting here?" He recognized the black male but was not

sure of his name. He also asked if they were residents of the apartment complex and for them to identify themselves.

The defendant said he was waiting for a friend. When Officer Warner asked where the friend lived, the defendant pointed to the closest apartment building. Getting no response to his initial question, Officer Warner asked them again to identify themselves. The defendant said, "Lamont Smith," and the black female said, "Jeanine Moore." Although asked by Officer Warner, neither occupant produced any form of identification. However, Ms. Moore later produced a driver's license.

Officer Warner then told both persons that he was going to run a record check and asked the black female to walk back with him to his vehicle. Officer Warner never told the defendant to stay or exit the vehicle or that he was free to leave. After she had walked back to Officer Warner's vehicle, he asked her the name of the defendant. She said, "Marcus Simms." Officer Warner recognized the name as someone he had dealt with before this evening. He had never dealt with the defendant about drugs, but he had been involved with the defendant in a domestic dispute in the nearby apartment building, and he knew that the defendant had been kicked out of that building.

As Officer Warner talked to Ms. Moore, the defendant got out of the white vehicle and stood in the door. He bent down and reached into the passenger seat area. Officer Warner ordered him to step back into the vehicle. The defendant did not, and after he failed to do so after a second request to get back in the vehicle, Officer Warner placed the defendant in handcuffs because of a fear that he would flee.

Officer Warner called for backup. Another officer arrived within two or three minutes. Subsequently, Ms. Moore consented to a search of the vehicle. During the search, drugs were found, and the defendant was later arrested for possession with intent to distribute cocaine.

### Legal Analysis

The sole issue raised by the defendant's Motion to Suppress is whether Officer Warner had the right to approach the vehicle in which the defendant was a passenger.

Defense counsel cited the recent case of *Ewell v. Commonwealth*, 254 Va. 214 (1997), as authority for the proposition that Officer Warner had no reasonable articulable suspicion that the occupants of the vehicle were engaged in criminal activity when he approached the vehicle; and, therefore, he had no right to do so. Defense counsel misplaces her reliance on *Ewell*

because it involved a stop by a police officer. Here there is no evidence that the vehicle was stopped by Officer Warner.

The Fourth Amendment only protects two types of seizures of the person, an arrest and an investigatory stop. If the actions of the officer do not rise to the level of an investigatory stop or an arrest, then the Fourth Amendment does not come into play. There is no rule that a police officer can only approach a person if he has reasonable suspicion that the person is engaged in criminal activity (an investigatory stop) or probable cause that the person is committing or has committed a crime (an arrest).

Police officers must have the ability to talk to citizens not only to investigate criminal activity but also for community relations. Is it not a current theory that police officers out in the community dealing with citizens on a daily basis are a better deterrent to crime than police officers who just respond to reports of crime?

There is no evidence that Officer Warner stopped the vehicle. He did not pull up to it with his emergency lights activated. There was no evidence that he blocked the vehicle in with his vehicle. The white vehicle was parked with its lights off when Officer Warner first saw it. He could not recall whether the vehicle's engine was running, but Ms. Moore never tried to move the vehicle. It is a reasonable inference that she parked the vehicle there voluntarily. She was not stopped by Officer Warner.

There was nothing about how Officer Warner approached the vehicle which would convert his approach to a seizure. It was dark; therefore, the use of a flashlight to illuminate the interior does not constitute a seizure. Just because Officer Warner had on a uniform displaying his badge does not make it a seizure. The questions asked by Officer Warner do not rise to the level of a show of authority so as to cause a seizure. He merely found an occupied vehicle in an unusual location, and he had the right to approach it to ascertain the situation.

The defendant seems to feel that Officer Warner could not approach the vehicle because it was not parked in a public place. He cites *Carson v. Commonwealth*, 12 Va. App. 497 (1991), *affirmed en banc*, 13 Va. App. 280 (1991), and *affirmed* at 244 Va. 293 (1992). The vehicle was parked in a parking lot at an apartment complex. While it may not have been parked on a public street, there was no evidence that it was parked in a location where a member of the public would not have had a right to be. There was no evidence that it was a private parking lot for tenants only. There was no evidence of any no trespassing signs. There was no evidence that a member of the public would not have been permitted to walk by the vehicle. Officer Warner

testified that he had patrolled the area over 500 times, but there was no evidence that he had ever been prevented from doing so.

I feel that the issue is not whether the vehicle was in a public place, but whether Officer Warner was in a place where he had the right to be. If indeed he had the right to be where he was, and the right to approach the vehicle, and to ask the questions of the occupants which he asked, no seizure ever occurred.

This case has been set for trial on February 20, 1998, with a jury.