COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Felton and Senior Judge Annunziata*
Argued at Alexandria, Virginia


JASON A. JETER

                                                        OPINION BY
v.        Record No. 3007-03-4                JUDGE ROBERT J. HUMPHREYS
                                                        JANUARY 18, 2005
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Henry E. Hudson, Judge

            V. James Ventura (Woodbridge, Ventura & Kelly, P.C., on briefs),
            for appellant.

            Susan Parrish, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General; Amy L. Marshall, Assistant Attorney General, on
            brief), for appellee.


        Appellant Jason A. Jeter appeals his conviction, following a jury trial, for distribution of

cocaine, in violation of Code § 18.2-248.  Jeter contends:  (1) that the trial court erred in

admitting into evidence a lock-sealed envelope containing a substance later identified as cocaine,

arguing that the Commonwealth failed to establish an unbroken chain of custody for the exhibit;

and (2) that the trial court should have granted his motion to strike because the opinion of the

Commonwealth's expert, in which the expert identified the substance as cocaine, lacked a

sufficient factual basis.  For the reasons that follow, we disagree, and therefore affirm his

conviction.

---

        * Judge Annunziata participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2004 and thereafter by her designation as a
senior judge pursuant to Code § 17.1-401.

On January 16, 2001, Detective Peter Rowe, a Fairfax County police officer, was working undercover with the Fairfax County Police Department's Street Crimes Unit. That evening, while "on the street" in an area "known [] for illegal narcotics being distributed," Detective Rowe encountered a woman named Judy Lewis. Detective Rowe told Lewis that he was "looking for drugs." She responded that she was looking for drugs as well. Lewis agreed to make a phone call for Detective Rowe to see if she could find someone to sell him cocaine. Detective Rowe then drove Lewis to another part of Fairfax County to meet with Jeter.

After Detective Rowe and Lewis arrived at the designated parking lot, Jeter pulled up in a separate vehicle. Lewis then got out of Detective Rowe's car and walked around the corner of a building. Jeter followed. About five minutes later, Jeter emerged from behind the building, "got into his vehicle[,] and drove out of the lot." Lewis then returned to Detective Rowe's car, "where she handed [him] crack cocaine wrapped in clear plastic." At that point, Lewis and Jeter were both arrested. After a trial on the merits, Jeter was convicted for distributing cocaine.

## I. Chain of Custody

Jeter first contends that the trial court erred in admitting a lock-sealed envelope containing the suspected cocaine, arguing that the Commonwealth failed to establish a proper chain of custody for the exhibit. "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). Also, the party objecting to the admission of the evidence has the burden of proving that the trial court erred. Dunn v. Commonwealth, 20 Va. App. 217, 220, 456 S.E.2d 135, 136 (1995).

"The purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested." Robertson v. Commonwealth, 12 Va. App. 854, 857, 406 S.E.2d 417, 419 (1991). Accordingly, to satisfy the chain of custody requirement, the proponent

of the evidence must show "'with reasonable certainty that the item [has] not been altered, substituted, or contaminated prior to analysis, in any way that would affect the results of the analysis.'" Crews v. Commonwealth, 18 Va. App. 115, 119, 442 S.E.2d 407, 409 (1994) (quoting Reedy v. Commonwealth, 9 Va. App. 386, 387, 388 S.E.2d 650, 650-51 (1990)). Although "[t]he Commonwealth is not required 'to exclude every conceivable possibility of substitution, alteration or tampering,'" Alvarez v. Commonwealth, 24 Va. App. 768, 776, 485 S.E.2d 646, 650 (1997) (quoting Robertson, 12 Va. App. at 857, 406 S.E.2d at 419), it must be able to "account for every 'vital link in the chain of possession.'" Id. at 777, 485 S.E.2d at 650 (quoting Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971)). When a "vital link" in the possession and treatment of the evidence is left to conjecture, the chain of custody is incomplete, and the evidence is inadmissible. Robertson, 12 Va. App. at 857, 406 S.E.2d at 419.

Here, the evidence, when viewed in the light most favorable to the Commonwealth, demonstrates that, on January 16, Detective Rowe immediately sealed the suspected cocaine in a "clear plastic baggie." At the station, he placed the suspected cocaine in a lock-sealed envelope, sealed the envelope with evidence tape, and marked the envelope with the date, his initials, and his identification number. On January 25, Detective Rowe gave the envelope to Gregory Perry, an authorized agent of the Division of Forensic Sciences (DFS).[1] Perry then gave the envelope to Joe Campbell, a security officer at DFS, and Campbell gave the envelope to Stephen

---

[1] Jeter contends that Perry's testimony was insufficient to prove that he received the envelope from Detective Rowe because Perry testified, on cross-examination, that he was unable to specifically recollect receiving the envelope from Detective Rowe. Perry also testified, however, that he must have received the envelope from Detective Rowe because the Request for Laboratory Examination attached to the envelope contained the name of "the originating agency and the officer including his signature." When viewed in the light most favorable to the Commonwealth, the sign-in sheet provided sufficient evidence to demonstrate that Perry received the envelope from Detective Rowe.

Schwartz. The envelope was in Schwartz's "continuous care and control" while he was performing the analytical tests on the suspected cocaine. And, after performing the analyses, Schwartz resealed the envelope with evidence tape and marked the envelope with his initials, the date, and the lab number. Both Schwartz and Detective Rowe identified the envelope at trial. Detective Rowe testified that the envelope was in the same condition at trial as it was "when [he] packaged it on the 16th of January," with the exception of "the markings from the Division of Forensic Science," and Schwartz testified that the envelope was in the same condition at trial as it was "when [he] first received it." Accordingly, the Commonwealth established every "vital link" in the chain of possession, thereby demonstrating with "reasonable certainty" that the evidence had not been altered, substituted, or contaminated.

Jeter contends, however, that the Commonwealth's failure to account for the nine-day gap between Detective Rowe's initial receipt of the evidence and its delivery to DFS renders the chain of custody incomplete. However, the evidence produced at trial establishes a direct chain of possession from Detective Rowe to Schwartz.[2] And, because the package was still sealed when Schwartz received it, there is no evidence that the substance in the envelope was altered, substituted, or contaminated prior to the chemical analyses. The Commonwealth therefore

---

[2] Jeter, citing Code § 19.2-187.01, concedes that "there is no argument concerning the absence of testimony on how the suspect envelope got from Mr. Perry to Mr. Campbell," focusing instead on the lack of evidence indicating where the envelope was located, and "[w]ho had access to it or possession of it," before Detective Rowe gave the envelope to Perry. Code § 19.2-187.01 provides that, upon presentation of a duly attested certificate of analysis, the Commonwealth establishes prima facie evidence of the chain of custody in the DFS "from the time such material is received by an authorized agent of such laboratory until such material is released subsequent to such analysis or examination." We note, however, that because the certificate of analysis was not actually introduced at trial, this statutory presumption does not apply. Regardless, because Jeter is not challenging the chain of custody after the envelope was received by DFS, we do not address that aspect of the chain of custody here.

demonstrated with reasonable certainty that the drugs Schwartz analyzed were the same as those originally obtained by Detective Rowe.

Moreover, "[w]here there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight of the evidence." Reedy, 9 Va. App. at 391, 388 S.E.2d at 651-52. Here, then, the trial court did not abuse its discretion when it admitted Exhibit 3 into evidence.

## II. Sufficiency of the Evidence

Jeter also contends that the trial court erred in denying his motion to strike, contending that Schwartz's "ultimate opinion" was not reliable because Schwartz did not personally test the control samples used to identify the presence of cocaine. In his opening brief, however, Jeter fails to cite any authority in support of this argument. According to Rule 5A:20(e), an appellant's opening brief must contain "[t]he principles of law, the argument, and the authorities relating to each question presented." By failing to cite any authority in support of this argument in his opening brief, Jeter has violated the provisions of Rule 5A:20(e). "[S]tatements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Thus, we will not consider this issue on appeal.

At oral argument, Jeter admitted that he did not cite any authority in support of this argument in his opening brief, but he asserts that the citation of authority in his reply brief should be sufficient to meet the requirements of Rule 5A:20(e). [3] Initially, we note that Rule 5A:20

---

[3] We further note that none of the authority Jeter cites in his reply brief has any bearing on whether the trial court erred in denying Jeter's motion to strike. The arguments and authorities contained in Jeter's reply brief focus on whether Schwartz's opinion was inadmissible because it lacked a sufficient foundation. If the opinion of an expert witness lacks an adequate foundation, the appropriate action at trial is to move to strike the testimony of the expert witness. See, e.g., Harward v. Commonwealth, 5 Va. App. 468, 364 S.E.2d 511 (1988). The trial court's

expressly applies only to the "Opening Brief of the Appellant." There is an entirely separate rule – Rule 5A:22 – that focuses on an appellant's reply brief. Compliance with one rule cannot excuse Jeter's failure to comply with the other.

Regardless, one of the fundamental purposes of Rule 5A:20(e) is to provide the appellee with notice of the authorities upon which the appellant purports to rely. Excepting oral argument, the appellee is given a single opportunity to distinguish cases and respond to arguments raised in the appellant's opening brief. See Rule 5A:21; see also Rule 5A:19 (granting the appellant, but not the appellee, the right to file a reply brief). The appellee therefore has no meaningful opportunity to address arguments and authorities raised for the first time in a reply brief. Permitting an appellant to sidestep the provisions of Rule 5A:20(e) by citing authorities only in his reply brief would therefore deprive the appellee of the opportunity to meaningfully respond to the appellant's argument, thereby eviscerating the underlying purpose of the Rule.

Because he presented no authority in his opening brief in support of his argument that the trial court erred in denying his motion to strike, Jeter has waived this issue on appeal, and we need not address it.

### III. Conclusion

For these reasons, the trial court did not err in concluding that the Commonwealth had established a proper chain of custody. And, because Jeter failed to cite any authorities in his

---

decision as to whether to strike the testimony of an expert witness is a question relating to the *admissibility* of the evidence. Jeter, however, did not move to strike the testimony of the expert witness. Rather, he moved to strike *all* of the Commonwealth's evidence. Whether the trial court erred in denying a motion to strike all of the evidence is a question of the *sufficiency* – not the admissibility – of the evidence. Accordingly, the authorities Jeter cites in his reply brief miss the point entirely: Jeter should have cited authority supporting the proposition that Schwartz's testimony was *insufficient*, not authority supporting the proposition that Schwartz's testimony was *inadmissible* – an argument he did not raise before the trial court.

opening brief to support his argument that the trial court erred in denying his motion to strike, he has waived this issue on appeal.  Accordingly, we affirm his conviction for distribution of cocaine.

<u>Affirmed.</u>