COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Haley and Senior Judge Bumgardner
Argued at Richmond, Virginia


THORN STERLING PETTIS

MEMORANDUM OPINION* BY
v.        Record No. 0162-08-2          JUDGE JAMES W. HALEY, JR.
                                        MARCH 24, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge

John W. Luxton (John W. Luxton, P.C., on brief), for appellant.

Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


I.  INTRODUCTION

Convicted of possession of cocaine with intent to distribute, trespassing, and identity

fraud, Thorn Sterling Pettis ("Pettis") argues his seizure by police was without reasonable

suspicion of criminal activity, and any statements or physical evidence obtained from that seizure

should be suppressed.  We affirm.

II.  BACKGROUND

The facts are undisputed.

On December 2, 2006, Officer Brandon Black of the Richmond City Police Department

was on patrol in the Fulton Hill area.  He observed Pettis and two other persons walk from a

sidewalk onto Richmond Redevelopment Housing Authority (RRHA) property.  Each apartment

building on the property has several "no trespassing" signs on it.  The police have the authority

to enforce RRHA trespass policy.  Black drove his patrol car in the direction the persons were

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

headed, but noticed when he did this that Pettis reversed his course. Black decided to investigate why Pettis made the reversal.

Black pulled his car about twenty to thirty feet behind and across the street from where Pettis was walking, exited the car, and asked to speak with him. Black testified he did not use a confrontational tone of voice and that in response to his inquiry, Pettis "stopped and turned and said yes." Pettis waited for Black to approach him.[1] Black inquired whether Pettis was visiting a resident of the property and, if so, who that person was and where the person resided. Pettis told Black he came from his girlfriend's residence. Pettis pointed to a building on the RRHA property, but failed to know an address. In response to a request from Black for identification, Pettis stated he did not have any, but identified himself as Thoron Edwards and supplied a birth date.

At this point, Black's partner attempted to verify the identifying information with a police database, but was told the information matched no one on record. Black tried to confirm Pettis' identity from another database, but was also unsuccessful.

Around this time, Black asked Pettis for permission to examine a cell phone and tissue Pettis had in his left hand. Pettis declined this request. Black testified Pettis "stated no. It's my napkin. It's my personal property. You can't see it."

Black testified he wanted to determine if Pettis had committed trespass on RRHA property since his story of coming from his girlfriend's residence on the RRHA property did not accord with the observation of him walking onto the property. Black stated that if Pettis was trespassing, Black would determine if Pettis was on a "barred list." If so, Pettis would be arrested for trespassing. If not, Black stated he would consider arresting him or providing a warning. Since the officers were ultimately unable to verify Pettis' identity based on the

---

[1] At the time Pettis spoke with the police, he was on a sidewalk near RRHA property.

information provided, they decided to arrest him for trespassing. As part of a search incident to arrest, "a chunk of off-white rock" was discovered in a pocket. That substance was determined to be cocaine.

Pettis was indicted for possession of cocaine with intent to distribute, identity fraud, and trespassing. Prior to trial, he moved to suppress the evidence obtained from his interaction with the police on the ground that the police lacked reasonable suspicion to detain him. The circuit court held a hearing on the motion to suppress on June 26, 2007, at the conclusion of which it denied the motion. Following a bench trial, the court found Pettis guilty of all charges.

### III. ANALYSIS

On appeal from the denial of a motion to suppress, we consider "the evidence in the light most favorable to the Commonwealth." Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008). Pettis has the burden of demonstrating reversible error. Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008).

Under the Fourth Amendment, police officers may conduct limited investigative detentions where they have reasonable suspicion of criminal activity. McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 516 (2008). Reasonable suspicion represents a standard less demanding than probable cause, but more than a hunch. Jackson v. Commonwealth, 267 Va. 666, 673, 594 S.E.2d 595, 598 (2004). We review *de novo* whether police possessed reasonable suspicion. Cost v. Commonwealth, 275 Va. 246, 250, 657 S.E.2d 505, 507 (2008).

On the other hand, police do not require any suspicion to engage persons in consensual encounters. White v. Commonwealth, 267 Va. 96, 104, 591 S.E.2d 662, 666 (2004). "'Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting

questions to them if they are willing to listen.'" Roulhac v. Commonwealth, 50 Va. App. 8, 14, 646 S.E.2d 4, 7 (2007) (quoting United States v. Drayton, 536 U.S. 194, 200 (2002)). Simply because police officers wear uniforms and have weapons does not mean an encounter lacks a consensual nature. Dickerson v. Commonwealth, 266 Va. 14, 18, 581 S.E.2d 195, 197 (2003).

Consensual encounters occur where "a reasonable person would feel free to disregard the police and go about his business." Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000) (internal quotation marks and citations omitted). Where "a reasonable person would not feel free to decline an officer's requests or would not feel free to leave, the encounter is not consensual." Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003). This "test is objective, and presumes an innocent person rather than one laboring under a consciousness of guilt. The consensual encounter becomes a seizure only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 4 (2008) (alterations, internal quotation marks, and citation omitted).

In evaluating whether a reasonable person would feel free to leave an encounter with a police officer, courts will consider a variety of factors. Conditions tending to show a lack of freedom include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" Parker v. Commonwealth, 255 Va. 96, 101, 496 S.E.2d 47, 50 (1998) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).

This Court recently considered whether a consensual encounter occurred and when an officer developed reasonable suspicion of trespassing under facts extremely similar to this case in Bandy v. Commonwealth, 52 Va. App. 510, 664 S.E.2d 519 (2008). There a police officer

- 4 -

was patrolling a housing development with several "No Trespassing" signs on it, which the police had the authority to enforce. Id. at 513-14, 664 S.E.2d at 520-21. The officer witnessed two men get out of a car and knock on a residence door. Id. at 513, 664 S.E.2d at 520. After the men received no answer, they began walking down the street. Id. at 513-14, 664 S.E.2d at 520-21. The officer decided to investigate. Id. at 513-14, 664 S.E.2d at 521. Along with another officer he had called to help, he approached the two men. Id. At that point, one of the men threw a bag of cocaine into a bush. Id. at 514, 664 S.E.2d at 521. That person was arrested. Id.

The second officer then initiated a discussion with the other individual (Bandy) walking from the housing development. Id. He did this by asking: "'Pardon me bro, I need to speak with you for a minute if you don't mind.'" Id. Bandy responded "'yeah, sure.'" Id. The officer then inquired whom Bandy had attempted to visit in the development. Id. Bandy failed to provide a name or address and was unable to even state where he had been before arriving there. Id. Bandy generally gave "evasive, inconsistent answers." Id.

Based on these facts, we held the second officer's meeting with Bandy represented a consensual encounter. We found important that the officer "made no show of force or authority and did not physically restrain Bandy." Id. at 517, 664 S.E.2d at 522. Rather, the officer had simply "approached Bandy and asked to speak with him." Id. We further found persuasive that the "patrol car was parked a block away without its lights on. Bandy was not surrounded by several police officers. Neither of the officers displayed their weapon or physically touched Bandy during the initial interaction." Id. Thus, a reasonable person would have understood himself free to leave the scene, making the encounter consensual. Id.

The Bandy Court further held that based on the second officer's meeting with Bandy, the officer developed reasonable suspicion of trespassing sufficient to justify an investigative

- 5 -

detention. Bandy had been observed on housing development property clearly marked with "No Trespassing" signs. Id. at 518, 664 S.E.2d at 523. When asked to explain his presence, he "was unable to give a name or address and gave extremely evasive answers. Bandy was unable to point out a particular location in which he was even attempting to go." Id. Given that Bandy had no apparent reason to be on housing development property and in light of his "evasive and inconsistent answers," we held these facts provided reasonable suspicion of trespassing. Id.

In light of the great similarities between Bandy and this case, we hold Bandy controls our decision here.[2] Based on Bandy, we find Officer Black initiated a consensual encounter with Pettis, which later developed into reasonable suspicion of trespassing.[3]

First, like Bandy, Black initiated his encounter with Pettis in a professional, non-confrontational manner that would lead a reasonable person to think he was free to leave.

---

[2] Decisions of a panel of this Court bind subsequent panels until overruled by this Court sitting *en banc*, our Supreme Court, or the United States Supreme Court. See Johnson v. Commonwealth, 252 Va. 425, 430, 478 S.E.2d 539, 541 (1996).

[3] At oral argument, Pettis' counsel cited Parker, 255 Va. 96, 496 S.E.2d 47, and Langston v. Commonwealth, 28 Va. App. 276, 504 S.E.2d 380 (1998), for the notion Pettis was seized when Black asked to speak with him. Both cases are easily distinguishable from this case. In Parker, an officer noticed a group of men standing around a car with an open trunk. 255 Va. at 99, 496 S.E.2d at 49. As the officer drove his police cruiser near the men, they dispersed. Id. The defendant walked up a road, and the officer followed him. Id. The defendant then turned around, and the officer turned his car to continue following the defendant. Id. When the defendant began to walk on property of a housing development, the officer "drove the police cruiser 40 feet off the street . . . and stopped at the location where the defendant was standing." Id. The officer got out of the car and questioned the defendant. Id. at 99-100, 496 S.E.2d at 49. The Court held that at this point the defendant was seized. Id. at 100, 496 S.E.2d at 49. The Court found important that the officer drove onto housing development property and stopped near the defendant. Id. at 103, 496 S.E.2d at 51. Here, by contrast, the police stopped behind Pettis, on the street, and on the other side of the street. In Langston, three officers followed the defendant on bikes and "peppered him with questions regarding his identity and destination." 28 Va. App. at 280, 504 S.E.2d at 382. When the defendant finally stopped to speak with them, the officers surrounded him and used their bikes to prevent his movement. Id. This Court held the encounter was not consensual. Id. at 282, 504 S.E.2d at 383. The officers here did not pepper Pettis with questions. Black asked Pettis in a non-confrontational way if he could speak with him. Furthermore, the officers were behind and across the street from Pettis. They did not block his movement.

Id. at 517, 664 S.E.2d at 522. When Black parked his patrol car near Pettis, the car was on the other side of the street and twenty to thirty feet behind Pettis. Id. Black asked Pettis to speak with him in a relaxed tone of voice. Parker, 255 Va. at 101, 496 S.E.2d at 50. Pettis, who was walking away, agreed to talk and waited for Black to approach him. Bandy, 52 Va. App. at 517, 664 S.E.2d at 522. Black's ensuing questioning concerning Pettis' purpose for being on the property did not render the encounter non-consensual. Id. at 517-18, 664 S.E.2d at 522-23. It was also not made non-consensual by inquiries as to Pettis' identity. Jones v. Commonwealth, 52 Va. App. 548, 556, 665 S.E.2d 261, 265 (2008). That Pettis viewed the encounter as consensual is shown by that when Black asked Pettis if he could see the napkin and cell phone in Pettis' left hand, Pettis refused. Pettis "stated no. It's my napkin. It's my personal property. You can't see it." These circumstances clearly evidence a consensual encounter.

Second, again like Bandy, Black gained reasonable suspicion of trespassing by observing Pettis enter housing authority property posted with "no trespassing" signs without any apparent reason for going there.[4] Bandy, 52 Va. App. at 518, 664 S.E.2d at 523. Pettis exited the property almost as soon as he entered. Although Pettis told Black he came from his girlfriend's residence, he could not give an address. Id. Additionally, Pettis' story about coming from his girlfriend's residence contradicted Black's visual observations, for Black had seen Pettis enter the property with two other persons then quickly reverse course and depart. Pettis' lack of explanation for his presence on the property, combined with the fact that his story contradicted

---

[4] Interestingly, the Commonwealth failed to present evidence at the suppression hearing that the property Pettis entered had "no trespassing" signs, unless such a finding could be inferred. Yet the Commonwealth did produce such evidence at trial. Black testified at trial that "[a]ll the buildings in several places have no trespassing signs on them" and that Pettis had a clear view of the signs. We may consider this evidence in affirming. DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542 (1987).

information in Black's personal knowledge, gave Black reasonable suspicion of trespassing.[5] Id.

Thus, once Pettis uttered his statements concerning coming from his girlfriend's residence, Black

could temporarily detain him. Up to that point, the encounter was clearly consensual.[6]

For the foregoing reasons, we affirm the judgment of the circuit court.[7]

Affirmed.

---

[5] In support of his argument that the police lacked reasonable suspicion to detain him, Pettis cites Harris v. Commonwealth, 262 Va. 407, 551 S.E.2d 606 (2001), and Ewell v. Commonwealth, 254 Va. 214, 491 S.E.2d 721 (1997). Both cases are distinguishable from the facts here. In Harris, the Court held that "[t]he mere presence of an unknown individual on the property of a large housing development does not create a reasonable suspicion that such an individual is engaged in trespassing." 262 Va. at 417, 551 S.E.2d at 611. Similarly, in Ewell the Court found that the simple presence of an unknown car in the parking lot of an apartment complex late at night did not give reasonable suspicion of trespassing, even though the area was known for drug activity and the car departed when police arrived. 254 Va. at 217, 491 S.E.2d at 723. Taken together, these cases stand for the proposition that a person's simple presence in an apartment complex, without more, does not produce reasonable suspicion of trespassing. See also Raab v. Commonwealth, 50 Va. App. 577, 584-85, 652 S.E.2d 144, 148 (2007) (*en banc*) (distinguishing Harris and Ewell). Here, by contrast, Black knew Pettis did not reside at the complex. He also knew that although Pettis claimed he came from his girlfriend's residence within the complex, Pettis could not provide an address and Black had personally observed contrary behavior.

[6] Black testified that once Pettis stated he had come from his girlfriend's residence, but was unable to give an address, he was not free to go. Black stated he was then "investigating a trespassing." We conclude Black was correct that he had reasonable suspicion of trespassing to justify a temporary detention at that point. Yet whether a seizure actually occurred is measured by an objective standard, not Black's subjective intent. Davis v. Commonwealth, 37 Va. App. 421, 429, 559 S.E.2d 374, 377 (2002). Furthermore, in order for a seizure to occur, a person must either submit to police authority or be under physical restraint. McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 546 (2001). We find it unnecessary to determine the precise moment of seizure since Black had reasonable suspicion once Pettis uttered the aforementioned relevant statements.

[7] Pettis' arguments appear to assume that if the police illegally detained him, the facts relating to his identity fraud conviction should also be suppressed. Having found the police did not infringe Pettis' rights, we do not further consider the matter.