UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, White and Senior Judge Annunziata
Argued at Fairfax, Virginia


PRESTON JOHN THOMAS HAMLIN
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0441-23-2                JUDGE KIMBERLEY SLAYTON WHITE
                                                          MAY 14, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Dennis M. Martin, Sr.,[1] Judge

(Marlene A. Harris, on brief), for appellant.  Appellant submitting
on brief.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Preston John Thomas Hamlin of possessing

a firearm having been previously convicted of a felony, possessing a Schedule I or II controlled

substance while possessing a firearm, and four counts of possessing a Schedule I or II controlled

substance with the intent to distribute.  Hamlin argues on appeal that the trial court erred by denying

his motion to suppress evidence that the police obtained after searching a vehicle he had been

driving.  He also argues that the trial court abused its discretion by admitting certificates of analysis

for substances and firearms found in the vehicle.  For the following reasons, we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge Paul W. Cella presided over Hamlin's suppression motion and motion for
reconsideration.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On April 3, 2021, the Dinwiddie County Sheriff's Office received two calls about a SUV traveling the wrong direction on Highway 460 and a third call that the SUV had stopped in the middle of the highway. Around midnight, Dinwiddie County Sheriff's Deputy Kincaid approached the stopped SUV after discovering it in the middle of 460 on top of the center dotted line with its brake lights on. When Deputy Kincaid first approached the SUV, the driver and sole occupant, Hamlin, was not alert despite the deputy shining his flashlight inside. The SUV started rolling when Hamlin was roused after the deputy repeatedly knocked on the driver's side window. Deputy Kincaid told Hamlin to put his SUV in park and to step out of the car. After repetitive instructions from the deputy, Hamlin complied.

An unfired round of ammunition fell from Hamlin when he moved to the rear of the SUV with Deputy Kincaid.[2] Deputy Kincaid briefly questioned Hamlin about the bullet that fell from his person, asked why he was stopped in the middle of the highway, and asked for identification. Hamlin did not have any identification on him but provided his social security number instead, which was then given to dispatch. Hamlin mentioned that he had been drinking earlier in the day

---

[2] The trial judge found that "the bullet falls from the [d]efendant's person which is clearly seen on the bodycam footage."

with some friends.  He admitted to having "a couple of drinks" and said "[b]ut, I'm good.  I can walk and shit."  Hamlin mentioned that he was on his way home, but Deputy Kincaid noticed that he was driving in the wrong direction for that to be true.  Meanwhile, dispatch reported back by radio that Hamlin was not licensed to drive and warned Deputy Kincaid to use caution.

Deputy Poarch then arrived.  Deputy Poarch asked where Hamlin was coming from, and Hamlin claimed to be coming from Richmond and that he was sitting in the middle of the road because he was lost and confused.  Upon arrival, Deputy Poarch saw a bullet lying between Deputy Kincaid's and Hamlin's vehicles.  Deputy Poarch asked Hamlin if he was a felon.  Hamlin stated that he was.

Twice the deputies requested permission to search the vehicle.  Hamlin denied consent both times, claiming that it was his sister's car.  Deputy Poarch also asked Hamlin if he had a gun in the vehicle.  The deputies placed Hamlin in handcuffs and told him that the restraints were for officer safety, but that he was not under arrest.

Standing outside the SUV, Deputy Poarch, from the roadway, looked through the open driver's side window of the SUV and observed firearms.  There was an AR-15 rifle "standing straight up in the passenger side seat with a double drum on it" as well as "a pistol with an extended magazine laying on the driver's side floorboard."  Deputy Kincaid looked through the window and saw the same guns.  In front of Hamlin, Deputy Kincaid radioed dispatch to confirm Hamlin's felon status.  Without being asked, Hamlin said, "I got felonies."  Dispatch then reported that Hamlin had been convicted of numerous felonies.  Deputy Poarch followed up with a phone call to dispatch and received the same information.

Having confirmation of Hamlin's felony convictions, Deputy Poarch read Hamlin his *Miranda v. Arizona*, 384 U.S. 436 (1966), rights and Hamlin acknowledged his rights by nodding his head.  Then, Deputy Poarch opened the driver's side door and found two clear bags

containing a white powdery substance and one bag with a whitish brownish powder near the door's inside handle. There were three more plastic bags containing a hard white rock-like substance in the center console. All told, Deputy Poarch and Deputy Kincaid recovered the six bags of suspected narcotics, the AR-15 rifle, two pistols containing ammunition clips with ammunition inside, and seven additional boxes of ammunition from inside Hamlin's car.

The encounter on the roadway between the deputies and Hamlin lasted approximately 35 minutes. Before less than half of that time had elapsed, the deputies were aware that Hamlin was not licensed to drive, despite being behind the wheel of a car in the center of a roadway, and that a bullet had fallen from his person, despite being a convicted felon. The remainder of the encounter included the discovery of the weapons and the substances from the car.

Following the arrest of Hamlin, he was transported to the jail. He was placed in a cell alone before processing. Corporal Davenport with the sheriff's office had previously searched the cell and found no narcotics. Between the time of the search and Hamlin's arrival, no one had been inside the cell. After Hamlin left the cell, Corporal Davenport found inside the cell a baggie of suspected narcotics. He turned the evidence over to Deputy Poarch.

Deputy Poarch took possession of all of the ammunition, including the one round found on the ground, as well as the firearms and submitted it all as evidence into secured property at the sheriff's office. In addition, he packaged and sealed all of the suspected narcotics, completed a property receipt, and prepared a request for laboratory analysis.[3] The evidence also was submitted into the secured property at the sheriff's office. Deputy Poarch testified that following submission, the evidence typically is transported to the lab for analysis by a member of the

---

[3] At trial, the deputy gave detailed testimony of the procedure used when sealing and marking the evidence. He described using red evidence tape as a sealer and affixing his initials onto the tape. He also testified that he did not alter the evidence in any way prior to packaging and submitting it all into secured property.

- 4 -

sheriff's office. Following testing at the lab, the evidence is picked up by a member of the sheriff's office and returned to secured property. The certificates of analysis for both the narcotics and the firearms indicated that the lab received and tested what had been packaged and submitted by Deputy Poarch. The certificates attributed the items to Hamlin, indicated that the narcotics had been received in a sealed condition, and identified each item received by visual description.

On March 25, 2022, there was a suppression hearing before the circuit court with the Honorable Paul W. Cella presiding. Arguing that the police did not have probable cause to search the vehicle and that he had not given consent to search the vehicle, Hamlin moved the court to suppress "the stop of the [d]efendant, and in turn suppress any and all evidence obtained from the search of the [d]efendant, or the vehicle the [d]fendant was driving." While Hamlin acknowledged that the initial encounter with law enforcement was not improper, he asserted that once he was "detained" at the rear of the car, the deputies had "no right to go further." Specifically, he asserted that the police searched the vehicle solely because a bullet had allegedly fallen out of Hamlin's lap. Hamlin argued that the Commonwealth failed to prove that the item was a bullet because it was not entered into evidence.

In denying the motion, the court found that the deputies could investigate why Hamlin was parked in the middle of the highway in the dark, stating "parking in the middle of the highway like this is not legal. That is a traffic infraction so that initial encounter was certainly valid." The court found that there was probable cause for that investigation when the deputies learned that Hamlin had been convicted of a felony and when Deputy Poarch saw two firearms in plain view.

Hamlin later moved for reconsideration, asserting for the first time that the evidence should be suppressed because the police violated his *Miranda* rights. He asserted that the

knowledge of his felony status was gained as a result of the violation. He argued that "any statements made by [Hamlin] while in hand cuffs and not advised o[f] his Miranda Rights or evidence seized at the traffic stop scene should not be admitted at the time of trial." The court denied Hamlin's motion without a hearing.

Prior to trial, pursuant to and in compliance with Code § 19.2-187, the Commonwealth provided written notice that it intended to use a certificate of analysis showing that the laboratory had tested various substances and determined them to contain fentanyl, cocaine, heroin, and methamphetamine. Hamlin did not file an objection as required by the statute.

On November 1, 2022, Hamlin was tried for four counts of possession of a Schedule I/II narcotic with intent to distribute in violation of Code § 18.2-248, possession of a firearm while possessing with intent a Schedule I/II controlled narcotic in violation of Code § 18.2-308.4, and possession of a firearm by a convicted felon in violation of Code § 18.2-308.2. Hamlin entered pleas of not guilty. The Honorable Dennis M. Martin, Sr., presided over Hamlin's trial and sentencing.

Following the questioning of witnesses on the facts from the April 3 encounter on 460, the Commonwealth asked Deputy Poarch about the contents of the certificate of analysis. Hamlin told the court that the certificate was "properly filed" and that he did not object to it "subject to cross." Without objection, Deputy Poarch testified that the amount and type of drugs noted in the certificate of analysis, as well as other circumstances specific to Hamlin, were consistent with distribution but inconsistent with personal use. After Deputy Poarch testified, another law enforcement witness also testified about the contents of the certificate of analysis, again without objection.

The Commonwealth then moved to formally admit the certificates into evidence. Hamlin objected on the ground that the Commonwealth did not establish the chain of custody for the

- 6 -

drug evidence. He conceded that Deputy Poarch "correctly collected the" substances from the vehicle but argued that there was no evidence about where those substances were in the 25 days between collection and testing. The Commonwealth recalled Deputy Poarch, who testified that he packaged and sealed the evidence and locked it in a secured facility. He explained that the normal procedure is for "[s]omebody from the sheriff's office from evidence" to transport the evidence to the Department of Forensic Science for testing. He confirmed that the certificate of analysis for the drugs described exactly the evidence he collected.

After Deputy Poarch's testimony, the court asked Hamlin if he had filed an objection to the certificate. Hamlin stated that he was "not objecting to the certificate." The court responded, "[t]hen the certificate is admitted" and cited Code § 19.2-187. Hamlin asserted that he was "not questioning the certificate" and agreed that the laboratory had tested "[w]hatever they were given" and determined it to be drugs. But he stated that he was challenging only "how did it get to them." The court responded "[b]ut that is the whole point of having the chain completed" and noted Hamlin's exception.

At the close of the Commonwealth's case, Hamlin moved to strike the Commonwealth's evidence and renewed his suppression motion, this time arguing that Deputy Kincaid prolonged the traffic stop longer than was necessary. The court denied Hamlin's motions.

Hamlin renewed all of his motions to strike, and the court denied them. The court then found him guilty of possessing a firearm having been previously convicted of a felony, possessing a Schedule I or II controlled substance while possessing a firearm, and four counts of possessing a Schedule I or II controlled substance with the intent to distribute. The court ruled that Hamlin's behavior—stopping on the highway and being slow to respond to Deputy Kincaid—provided the deputy with reasonable articulable suspicion to believe Hamlin was driving while impaired. The court held that body camera footage "clearly" showed the bullet

- 7 -

"falls" from Hamlin's person and that, within 4 minutes and 15 seconds of Deputy Poarch's arrival, the deputies learned that Hamlin was a felon. The court also found that the deputies learned that Hamlin was driving without a license "which meant he [could not] go anywhere with that car." The court sentenced Hamlin to 67 years' imprisonment with 56 years suspended.

ANALYSIS

I. Challenge to the Stop and Subsequent Search

Appellant argues that the trial court erred in denying his motion to suppress because there was in fact an illegal stop and search. "'In reviewing the denial of a motion to suppress, we "consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial."'" *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)). The defendant bears the burden of demonstrating that the trial court erred by denying his motion to suppress. *Street v. Commonwealth*, 75 Va. App. 298, 303-04 (2022). In reviewing the trial court's denial of a motion to suppress, we consider the evidence admitted at the suppression hearing and at trial. *Commonwealth v. White*, 293 Va. 411, 414 (2017).

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact." *Turner v. Commonwealth*, 75 Va. App. 491, 500 (2022) (quoting *Murphy v. Commonwealth*, 264 Va. 568, 573 (2002)). Similarly, "[w]hether the circumstances of [a police interview] were such as to require *Miranda* warnings is a mixed question of law and fact." *Keepers v. Commonwealth*, 72 Va. App. 17, 33 (2020) (second alteration in original) (quoting *Spinner v. Commonwealth*, 297 Va. 384, 392 (2019)).

Accordingly, this Court "defer[s] to the trial court's findings of 'historical fact' unless such findings are 'plainly wrong or devoid of supporting evidence.'" *Turner*, 75 Va. App. at 500 (quoting *Saal v. Commonwealth*, 72 Va. App. 413, 421 (2020)). "While we are bound to review

de novo the ultimate questions of reasonable suspicion and probable cause, we . . . 'give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Long v. Commonwealth*, 72 Va. App. 700, 712 (2021) (footnote omitted) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

In our analysis of the appellant's challenge, we also recognize that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The primary reason for requiring a contemporaneous objection is to allow opposing counsel and the trial court a fair opportunity to address the challenge and prevent unnecessary appeals and retrials. *Jones v. Commonwealth*, 71 Va. App. 597, 607 (2020).

Appellant's approach to his challenging of his detention and the subsequent search of the car has progressed over the life of this case in steps as Hamlin failed in motion after motion before the trial court. First, he argues that the trial court erred in denying appellant's motion to suppress because there was no probable cause for the search because there was no lawful reason for the stop. Then, he argues that the bullet that fell from him could not give rise to probable cause to search because the bullet was not contraband. Next, recognizing that the first arguments failed at the motion to suppress hearing, appellant argues that the deputies only knew he was a felon because of information they gained when he was questioned while being detained without the benefit of *Miranda* warnings. Some of Hamlin's challenges are preserved for review; some of them are waived; all of them again fail.[4]

---

[4] Appellant's recitation of facts also neglects to include relevant evidence presented to the trial court. Among the omissions are that Hamlin was not a licensed driver, that Hamlin told the deputies he was a felon twice, both before and after he was handcuffed, and that dispatch informed the deputies that Hamlin was a convicted felon.

A. The Stop Challenge

To conduct an investigatory stop, a police officer must have a reasonable suspicion, based on objective facts, that the person is involved in criminal activity. A court should consider the totality of the circumstances when determining whether a police officer had a particularized and objective suspicion that the person stopped took part in criminal activity. *Ewell v. Commonwealth*, 254 Va. 214, 217 (1997). "If there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him, or to detain him briefly while attempting to obtain additional information." *Hayes v. Florida*, 470 U.S. 811, 816 (1985). Reasonable suspicion is less than probable cause. *Atkins v. Commonwealth*, 57 Va. App. 2, 19 (2010) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

Hamlin did not challenge the stop and initial detention below.[5] Indeed, he specifically stated at the motion hearing that "[t]here [was] nothing wrong with the [police officers'] initial inquiry." Accordingly, he has not preserved appellate review of whether the police possessed reasonable and articulable suspicion to detain him as part of an investigatory stop. Hamlin does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and this Court will not apply the exceptions sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc). Moreover, "[a] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Nelson v. Commonwealth*, 71 Va. App. 397, 403 (2020) (alteration in original) (quoting *Rowe v.*

---

[5] Hamlin asserts that Deputy Kincaid testified that he found Hamlin "to be a little bit suspicious." Hamlin presents this purported testimony as the only basis for his detention. Hamlin's quote does not come from Deputy Kincaid's testimony at the suppression hearing, however, but rather the Commonwealth's opening statement at trial. Hamlin's reliance on the Commonwealth's opening statement at trial supports the conclusion that he makes a different argument on appeal than he made in his *pretrial* suppression motion and motion for reconsideration.

*Commonwealth*, 277 Va. 495, 502 (2009)). "[T]here is no 'ends of justice' exception to the approbate and reprobate doctrine." *Id.* at 405.

### B. The Probable Cause Challenge

Appellant argues that the ammunition dropping from his person when he got out of the SUV at Deputy Kincaid's request led to the search of his vehicle. And, at that point, Deputy Kincaid allegedly did not have probable cause to search as having ammunition is not per se illegal. However, Hamlin is incorrect about how the deputies met the probable cause standard to search his SUV.

We agree with the trial court that the police had probable cause to search the vehicle.[6] "Under long-standing Fourth Amendment jurisprudence, a police officer may, before making an arrest and without obtaining a search warrant, search a vehicle involved in a traffic stop so long as the officer has probable cause to do so." *Curley v. Commonwealth*, 295 Va. 616, 621 (2018). There is probable cause when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 622 (quoting *Jones v. Commonwealth*, 277 Va. 171, 178 (2009)).

Here, the police knew from dispatch and from Hamlin himself that Hamlin had prior felony convictions. When they shined a flashlight through the car window, they could see what

---

[6] Hamlin's third assignment of error states that the "[t]rial court erred in finding that the search did not exceed the scope of the stop." Hamlin did not raise this argument in his first suppression motion or his motion for reconsideration. Instead, he raised it for the first time when "renewing" his suppression motion after the Commonwealth rested at trial. *But see* Code § 19.2-266.2 (requiring criminal defendants to file suppression motions in writing before trial). Even if Hamlin's objection was timely, his opening brief provides no argument or authorities showing that the police unconstitutionally prolonged the stop. Rather, the argument section connected to Hamlin's third assignment of error relates to whether the police had reasonable articulable suspicion to detain Hamlin, an argument we earlier concluded Hamlin did not preserve below. We decline to consider whether the police unconstitutionally prolonged what began as a valid traffic stop. *See* Rule 5A:20(e) (requiring a "standard of review and argument (including principles of law and authorities) relating to each assignment of error").

appeared to be an AR-15 with a double drum magazine in the passenger seat and a handgun with an extended magazine on the driver's side floorboard, both sitting in plain view. *Cf. Texas v. Brown*, 460 U.S. 730, 739-40 (1983) (explaining that the officer's "shining his flashlight to illuminate the interior of [the defendant's] car trenched upon no right secured . . . by the Fourth Amendment"); *Gibson v. Commonwealth*, 50 Va. App. 744, 753 (2007) (holding that a bulge in the defendant's pants was in plain view even though the officer could only see it with a flashlight because it was dark outside). As the trial court appropriately found, those firearms gave the police probable cause to search the vehicle, even independent of the bullet that fell from Hamlin's person.

## C. The *Miranda* Challenge

Turning to Hamlin's *Miranda* challenge,[7] the Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Before the prosecution uses statements at trial that a defendant makes during a custodial interrogation, it must first demonstrate that the police, at a minimum, informed the defendant that he possesses certain rights, such as the right to remain silent and to have a lawyer present before questioning. *Thomas v. Commonwealth*, 72 Va. App. 560, 574 (2020) (citing *Miranda*, 384 U.S. at 444).

---

[7] Hamlin raised *Miranda* for the first time in his motion for reconsideration, in which he asked the trial court to suppress "any statements made by [Hamlin] while in hand cuffs and not advised o[f] his Miranda Rights or evidence seized at the traffic stop scene." The only statement Hamlin identifies on appeal is his admission to the police that he had previously been convicted of a felony. Hamlin first admitted to having felony convictions *before* the police handcuffed him. To the extent Hamlin argues that the trial court erred by not suppressing his pre-handcuff statement, he has not preserved appellate review of that argument. To the extent he argues that the trial court erred by not suppressing his post-handcuff admission that he had felony convictions, that argument at most would support harmless error given the identical earlier admission.

Binding case law forecloses Hamlin's argument that the physical evidence obtained from the car was "the fruit of the poisonous tree" because the search stemmed from Hamlin's unwarned admission that he had a felony conviction.[8]  "The *Miranda* rules are prophylactic rules that . . . protect the Fifth Amendment right against compelled self-incrimination." *Vega v. Tekoh*, 142 S. Ct. 2095, 2106 (2022).  "The Self-Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement," even if that statement is obtained through custodial interrogation conducted without *Miranda* warnings. *United States v. Patane*, 542 U.S. 630, 636-37 (2004).  Accordingly, even if we agreed that Hamlin was in custody at the time he admitted to having a felony conviction, the physical evidence obtained from the vehicle cannot be the fruit of the poisonous tree.

## II.  Challenge to the Certificate of Analysis[9]

"It is well-settled that '[d]ecisions regarding the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion."'" *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (alteration in original) (quoting *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)).  We also review a trial court's determination on a chain of custody challenge for abuse of discretion.

---

[8] Police dispatch also informed the deputies that Hamlin had felony convictions.  "[T]he 'independent source doctrine allows the admission of evidence that has been discovered by means wholly independent of any constitutional violation.'" *Carlson v. Commonwealth*, 69 Va. App. 749, 760 (2019) (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984)).

[9] To the extent Hamlin challenges the admission of the certificate of analysis concerning the firearms, Rule 5A:18 bars appellate review because Hamlin made no argument in the trial court concerning that certificate.  We will assume for the sake of this opinion that Rule 5A:18 does not bar appellate consideration of Hamlin's challenge to the certificate of analysis concerning the drugs.  Hamlin did not object that the certificate of analysis showed invalid results, nor did he object on Confrontation Clause grounds.  He instead argued that the Commonwealth failed to establish the chain of custody before the substances were submitted to the laboratory for testing.  Consequently, we consider Hamlin's argument notwithstanding Code §§ 19.2-187, -187.1.

*Pope v. Commonwealth*, 60 Va. App. 486, 511 (2012). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022).

"[T]he purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested." *Hargrove v. Commonwealth*, 53 Va. App. 545, 553 (2009) (quoting *Brown v. Commonwealth*, 21 Va. App. 552, 555 (1996)). To establish a chain of custody, the Commonwealth's evidence must "afford[] reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained." *Id.* (quoting *Anderson v. Commonwealth*, 274 Va. 469, 479 (2007)); *see also Jeter v. Commonwealth*, 44 Va. App. 733, 737 (2005).

In proving the chain of custody, the Commonwealth need not "exclude every conceivable possibility of substitution, alteration or tampering." *Id.* at 554 (quoting *Anderson v. Commonwealth*, 48 Va. App. 704, 717 (2006)). "[W]here 'there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight of the evidence.'" *Anderson*, 48 Va. App. at 717 (quoting *Jeter*, 44 Va. App. at 739). "[G]aps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." *Pope*, 60 Va. App. at 511 (second alteration in original) (quoting *Aguilar v. Commonwealth*, 280 Va. 322, 332-33 (2010)).

Appellant correctly acknowledges that the Commonwealth must at least provide "reasonable assurance that the sample to be admitted at trial is the same sample, and in the same condition, as when it was first obtained." *Johnson v. Commonwealth*, 259 Va. 654, 678 (2000). That said, appellant does not believe the links in the chain of custody to and from DFS were established. Appellant emphasizes that Deputy Poarch admitted that he did not know who transported the items from evidence to DFS, or back from DFS to evidence at the sheriff's office

- 14 -

and that he had not seen the items since they were tested. Deputy Poarch assumed that they were in evidence at the sheriff's office but had not looked. Appellant also argues that it was problematic that no other officer or employee of the sheriff's office testified about the chain of custody.

We agree that the Commonwealth met its burden of proof. It is true that the Commonwealth did not establish exactly who transported the evidence from the sheriff's evidence lockup to the laboratory for testing. At the same time, Deputy Poarch testified that he sealed, initialed, and locked the evidence in a secure facility, that someone from the sheriff's office is responsible for transporting that evidence to the laboratory, and that the certificate of analysis described sealed envelopes containing evidence exactly like that which Deputy Poarch collected. That testimony is enough to establish with reasonable certainty that the laboratory tested the same evidence that Deputy Poarch collected. *See Jeter*, 44 Va. App. at 737 (explaining that a court does not abuse its discretion by admitting evidence where there is "mere speculation that contamination or tampering could have occurred").

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

- 15 -