[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13628

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MARK CHRISTOPHER MENENDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:19-cr-00035-AW-GRJ-1

_____

Before JORDAN, NEWSOM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Mark Menendez appeals his conviction after pleading guilty to possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii).  On appeal, Menendez challenges the district court's denial of his motion to suppress evidence: drugs seized during a traffic stop.  No reversible error has been shown; we affirm.

## I.

On 3 April 2019, Deputy Stephenson and Deputy Diaz (officers with the Alachua County Sheriff's Office and members of the highway interdiction drug task force) were on patrol on I-75 in Alachua County, Florida.  Each officer had parked his patrol vehicle in the median.  Sergeant Spradley (an officer with the Columbia County Sheriff's Office's drug task force) drove past Deputies Stephenson and Diaz.  Sergeant Spradley contacted Deputy Stephenson and reported that he had moments before observed a silver Nissan Altima speeding, following too closely, and engaging in suspicious behavior.

Deputy Stephenson pulled ahead in traffic to catch up with the Nissan identified by Sergeant Spradley.  When Deputy Stephenson first approached the Nissan, the Nissan appeared to be following too closely to the car in front of it: a violation of Florida law.  Deputy Stephenson then observed the Nissan "slow down

dramatically" and saw that the car's occupants seemed extremely nervous. Deputy Stephenson activated his blue lights and initiated a traffic stop.

After the Nissan pulled over, Deputy Stephenson identified the Nissan's driver as Menendez and the front-seat passenger as Ronny Lewis. When asked for his license, Menendez responded that he did not have one. Deputy Stephenson told Menendez that -- absent other issues -- he would likely just issue a warning for the suspended driver's license and traffic violations. Deputy Stephenson instructed Menendez to exit the Nissan and to stand in front of the patrol vehicle.

Deputy Stephenson then spoke with Lewis. Lewis said he had rented the Nissan but had no rental agreement. About his travel plans, Lewis said he and Menendez had been visiting some girls in Ocala. Deputy Stephenson testified that Lewis was "extremely nervous" and appeared to be under the influence of drugs. While Deputy Stephenson was speaking to Lewis, Deputy Diaz arrived on the scene.

Deputy Stephenson returned to his patrol vehicle and began to prepare a warning citation. As Deputy Stephenson filled out the warning form, he asked Menendez about his travel plans. Menendez responded that he and Lewis had been in Orlando, stopped briefly in Ocala to meet with a girl and were heading back to Gainesville: a response Deputy Stephenson perceived as inconsistent with Lewis's answer. During this interaction, Menendez

appeared nervous, avoided eye contact, was "fidgeting around," and kept looking back toward the Nissan.

Deputy Stephenson then asked Menendez whether drugs were in the Nissan. Menendez did not respond verbally, but appeared even more nervous. Menendez then refused to consent to a search of the Nissan.

At that point, Deputy Diaz prepared to conduct a dog sniff of the exterior of the Nissan. Deputy Diaz instructed Lewis to exit the Nissan, and then Diaz went to get his police dog out of his patrol vehicle.

As Deputy Diaz was retrieving his police dog, Deputy Stephenson saw Menendez make a furtive movement, moving his right arm out of view and toward his right side. Concerned that Menendez might be reaching for a weapon, Deputy Stephenson conducted a pat-down search of Menendez. During the pat-down search, Deputy Stephenson felt a rock-like substance in Menendez's right pocket: an object Deputy Stephenson believed to be methamphetamine.

Deputy Stephenson seized a baggie of methamphetamine from Menendez's pocket. Deputy Diaz returned his police dog to his patrol car; no dog sniff was conducted. The officers searched the Nissan and found almost 200 grams of methamphetamine.

Menendez later moved to suppress the drugs seized during the traffic stop. In pertinent part, Menendez challenged the lawfulness of the initial traffic stop and the lawfulness of the traffic stop's

duration.[1] Following a suppression hearing, the district court denied Menendez's motion.

Menendez entered a conditional guilty plea, reserving his right to appeal the district court's denial of his motion to suppress. The district court sentenced Menendez to 120 months' imprisonment followed by 10 years' supervised release.

## II.

We review the district court's denial of "a motion to suppress evidence under a mixed standard, reviewing the court's findings of fact for clear error and the application of law to those facts *de novo*, construing the facts in the light most favorable to the prevailing party below." *See United States v. Pierre*, 825 F.3d 1183, 1191 (11th Cir. 2016). We review *de novo* a district court's determinations about reasonable suspicion and probable cause. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996).

### A. Traffic Stop

Consistent with the Fourth Amendment, a police officer may conduct a brief investigative traffic stop when the officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396 (2014). "Even minor traffic violations qualify as

---

[1] Menendez also challenged the lawfulness of the pat-down search. Because Menendez raises no challenge to the pat-down search on appeal, that issue is abandoned. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

criminal activity." *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (*en banc*). Reasonable suspicion is determined based on the totality of the circumstances, including "both the content of information possessed by police and its degree of reliability." *Navarette*, 572 U.S. at 397. In deciding whether reasonable suspicion existed at the pertinent time, we consider whether reasonable suspicion existed objectively under the circumstances. *See United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006). An officer's subjective motivations are immaterial to whether a traffic stop is reasonable under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Police may rely "on their own experience and specialized training to make inferences from and deductions" about the information before them, and we "give due weight to the officer's experience" when examining the totality of the circumstances. *See United States v. Lindsey*, 482 F.3d 1285, 1290-91 (11th Cir. 2007); *United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991). Reasonable suspicion need not be based solely on an officer's personal observations; information supplied by a third person may also give rise to reasonable suspicion justifying an investigatory stop if the information bears "sufficient indicia of reliability." *Navarette*, 572 U.S. at 397.

The totality of the circumstances involved in this case, viewed in the light most favorable to the government, gave rise to reasonable suspicion justifying a traffic stop. Deputy Stephenson was entitled to rely on Sergeant Spradley's contemporaneous

20-13628                Opinion of the Court                        7

report that he had just observed the Nissan speeding and following too closely: a tip that bore sufficient indicia of reliability. Deputy Stephenson then personally observed the Nissan commit what Deputy Stephenson perceived -- based on his experience and training -- as a traffic violation under Florida law by following too closely the car in front of it.[2]

During his testimony at the suppression hearing, Menendez disputed that he was following too closely. When testimonies are in direct conflict, the district court's "choice of whom to believe is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony," or its credibility determination is "contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (emphasis in original). Here, the district court heard testimony from both Deputy Stephenson and from Menendez and found Deputy Stephenson's testimony credible. The dashcam video of the traffic stop does not contradict obviously Deputy Stephenson's version of the events. Nor is Deputy Stephenson's testimony "contrary to the laws of nature" or otherwise "inconsistent or improbable on its

---

[2] Under Florida law, "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon, and the condition of, the highway." Fla. Stat. § 316.0895(1).

face." Accordingly, we defer to the district court's credibility finding.

Given the totality of the circumstances presented, reasonable suspicion existed to believe that Menendez had committed a traffic violation. The district court committed no error in determining that the traffic stop was lawful.

## B. Duration of Traffic Stop

Menendez contends that Deputy Stephenson prolonged unlawfully the duration of the traffic stop by asking questions about Menendez's travel plans and by asking about possible contraband in the Nissan: questions Menendez says were unrelated to the purpose of the stop.

Even when reasonable suspicion exists to make a traffic stop, police do not have "unfettered authority to detain a person indefinitely." *Campbell*, 26 F.4th at 881. A traffic stop "is unlawfully prolonged when an officer, without reasonable suspicion, diverts from the stop's purpose and adds time to the stop in order to investigate other crimes." *Id*. at 884. The purpose of the traffic stop includes addressing the traffic violation that prompted the stop and attending to "related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). An officer's mission during a traffic stop includes "ordinary inquiries incident to the traffic stop" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. (brackets omitted).

Considering the totality of the circumstances, we cannot conclude that Deputy Stephenson prolonged unlawfully the traffic stop.  Deputy Stephenson's first set of questions about the men's travel plans -- asked while Deputy Stephenson was still completing the written warning form -- constituted "ordinary inquiries" related to the traffic stop.  *See Campbell*, 26 F.4th at 885 ("Generally speaking, questions about travel plans are ordinary inquiries incident to a traffic stop.").

As Deputy Stephenson performed routine traffic-related tasks, he and Deputy Diaz observed conduct giving rise to reasonable suspicion of criminal activity beyond the traffic infraction. Menendez and Lewis both exhibited extreme nervousness, even after being told that Menendez would be given only a warning ticket. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."); *United States v. Simms*, 385 F.3d 1347, 1350, 1354-55 (11th Cir. 2004) (concluding that reasonable suspicion existed to prolong a traffic stop in part because the driver "continued to appear very nervous even after being told he was only getting a warning citation").  Menendez had no valid driver's license; and, although Lewis said he had rented the Nissan, he had no rental agreement. The two men also gave inconsistent answers about their travel plans, were coming from a source city for narcotics, and were traveling along a known drug-trafficking corridor. *See United States v. Holt*, 777 F.3d 1234, 1257 (11th Cir. 2015) (concluding that the circumstances gave rise to reasonable suspicion when the driver

refused to make eye contact, had shaking hands, and when the driver and passenger provided inconsistent statements about their recent travel); *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991) (determining that reasonable suspicion existed when the driver was driving a rental car, had a restricted license, was "shaking" and acting "extremely nervous", and gave conflicting responses about where he had been); *see also Wardlow*, 528 U.S. at 124 (explaining that a person's presence in a high crime area is "among the relevant contextual considerations" in evaluating reasonable suspicion).

The totality of these circumstances gave rise to reasonable suspicion that Menendez was involved in criminal activity beyond the initial traffic violation.  Because reasonable suspicion existed when Deputy Stephenson asked additional questions about possible contraband (questions aimed at investigating criminal activity beyond a traffic infraction), those questions did not prolong unlawfully the traffic stop.

The district court committed no error in denying Menendez's motion to suppress.  We affirm Menendez's conviction.

AFFIRMED.